## Andrus B. Keator v. The People.

*Impeaching testimony: Reputation: Time.* Evidence of bad reputation for veracity four years previous to the trial is held admissible to impeach a witness who had no fixed domicile and had been out of the state over a year of the time, and whose residence at the place of such reputation was as long as at any other.

*Impeaching witness: Reputation for veracity: Opinion as to credibility under oath.* An impeaching witness may be asked, either on direct or cross-examination, whether from the evil reputation to which he has testified, he would believe the impeached witness under oath.

*Impeaching testimony: Reputation for veracity: Opinion as to credibility.* Where one has sworn that from a witness' reputation when he knew him some time previous he would not believe him under oath, it is immaterial, in the absence of any evidence of a change of views, whether that is his present opinion after reflection or one formed at the time.

*Perjury: Authority to administer oath in open court: Deputy clerk: Officer.* In a trial for perjury evidence that the oath was administered in open court by one who was acting as deputy clerk is sufficient proof of his official character. In a collateral proceeding it is enough that he was shown to be an officer *de facto.*

*Perjury: Informations: Allegation of authority to administer oath.* In an information for perjury in swearing falsely under an oath administered

in a court on a jury trial, an allegation that the judge presiding, naming him, then and there had authority to administer the oath, is not an averment that the judge himself administered the oath, and will not exclude evidence that it was administered by the clerk or deputy.

*Perjury: Information: Time: Variance.* Where such an information alleges that the oath was administered at the trial of a cause fully identified, a variance of one day in the proofs, from the time alleged as the day of the trial, is not fatal.

*Charge to the jury: Introductory remarks: Statements that do not mislead.* An introductory remark in the instruction to the jury, that the statements of the prisoner as a witness were substantially negatived by the information, is held unobjectionable where it could not have misled the jury, and where no improper testimony concerning false statements had been admitted.

*Instructions to the jury: Impeaching testimony.* A statement of the circuit judge while commenting to the jury on the mode of impeaching witnesses adopted by the prosecution, by proof of contradictory statements, that it is liable to close search and careful scrutiny, for reasons which he enlarged upon, does not constitute an instruction of such a nature as to be open for review on error.

*Heard October 13. Decided October 19.*

Error to Ingham Circuit.

*M. V. Montgomery,* for plaintiff in error.

*Andrew J. Smith, Attorney General,* for the People.

CAMPBELL, J :

Keator was convicted of perjury, and the case comes up on questions raised upon exceptions taken at the trial.

One Meracle having been introduced as a witness for respondent, evidence was given to impeach his character for veracity. Jesse Hurd was allowed to testify to his bad reputation in the town of Blackman, where he resided in 1870, and until early in 1871 (being four years previous to the trial). He swore that he knew it, and that it was bad, and that he would not from such reputation believe Meracle on oath.

The time is certainly somewhat remote, but the witness showed by his own testimony that he had not any very long residence in any one place, and that his residence at and near Blackman was as long as any other, and that he thereafter left the state for over a year, returning in June,

1872.    His arrest in this case was less than a· year after his return.    We think that under such circumstances it was not improper to allow a larger range of inquiry than would be proper where there had been a more fixed domicile, and· that the testimony was not too remote.—*Hamilton v. People, 29 Mich., 173.*

In the case of *Hamilton v. People* we had occasion to discuss the question whether it was proper to allow an inquiry if the impeaching witness from the evil reputation of the impeached witness would believe him under oath.    We there held it proper on cross examination; but we think the same reasons render it proper also on direct examination, as it is as certainly as proper to lay before the jury all that directly bears on the impeachment without cross-examination as with it.    We do not think it necessary to repeat the grounds which were there discussed, and which, in our opinion, vindicate the rule of the English and of many American cases against what we deem an incorrect doctrine of Mr. Greenleaf to the contrary.

The criticism that it does not appear distinctly that Hurd's opinion of Meracle's credibility on oath refers to 1871 is not, we think, well taken.    He swears that from Meracle's reputation, concerning which he had testified, he would not believe him on oath.    If that was the basis of his opinion, his present opinion after reflection would be quite as admissible as his former one, and he was not cross-examined as to any change of views.

It is also objected that the information alleges that the oath of Keator was administered by Alexander D. Crane, circuit judge, whereas the proofs showed it to have been administered by one R. D. Knowles, acting as deputy clerk, but whose official character, it is claimed, was not proven.

As it appeared Knowles was acting openly in the circuit court, which must have had judicial knowledge of his position and action, we think no better evidence was needed of his official character.    In a collateral proceeding it is enough that he was shown to be an officer *de facto*.

We do not understand the information to contain any

allegation that Judge Crane himself administered the oath. Taking it altogether it shows expressly that the oath was administered in the circuit court on a jury trial where the judge presided. The only foundation for the claim in question is the allegation that the judge then and there had authority to administer the oath. This is found in the English forms, and probably rests on the assumption that whoever administers the oath acts as the minister of the court or judge in whom the real authority rests. But the information cannot be made better or worse for inserting or omitting a matter judicially noticed. We must know judicially that the court had authority to administer the oath, either by the judge or by the clerk or deputy, and the proof contradicts no averment, and was proper.

We do not think it material whether the oath was shown to have been taken on the 3d or 4th of April. The court records do not show the dates when each witness is sworn, and this must rest in parol. The material thing appears in the allegations that the oath was taken on the trial of a cause fully identified, and the particular day of the trial need not be averred so positively that a variance of a day would be fatal. We think the case comes within the established statutory rule.—§ 7923, C. L.

We do not think the objection well taken that the judge erroneously told the jury that the statements of Keator as a witness were substantially negatived by the information. There is no claim that the jury were or could have been in any way misled, or that any testimony concerning false statements was improperly admitted. The remark was plainly designed as introductory to the more specific portions of the charge, and was not, we think, objectionable.

It is also claimed that the judge should not have given the jury his opinion that the mode of impeaching witnesses for the prosecution by proof of contradictory statements is liable "to close search and careful scrutiny," for reasons which he enlarged upon, while he did not dwell in the same manner upon the impeaching testimony on the other side.

We find, however, that his charge is very full and correct in explaining fairly and thoroughly to the jury their rights and functions in regard to evidence, and the force to be given to it; and we do not think it appears that any invidious sense was intended to be attached, or understood to belong, to the remark complained of. It does not constitute an instruction of such a nature as to be open to review on error.

We find no error in the record, and the conviction should be affirmed.

The other Justices concurred.