THE STATE OF MISSOURI, Respondent, v. JOHN T. MILLER, Appellant.

St. Louis Court of Appeals, February 24, 1891.

1. **Criminal Law**: CORRUPT VOLUNTARY OATH: ILLEGAL PURPOSE OF PROSECUTION. When the manifest purpose of a criminal prosecution is to use the machinery of the criminal law to enforce the payment of a gambling debt, or to punish its non-payment, the courts will not lend their aid thereto; nor is a voluntary oath falsely made for the purpose of influencing a stakeholder in the payment of a gambling wager, such a corrupt oath as the statute (R. S. 1889, sec. 3668) intends to reach and punish. But, *held* by BIGGS, J., dissenting, that the record did not disclose that such was the purpose of the prosecution in this cause.

2. ———: ———. In prosecutions for the making of a corrupt voluntary oath, there cannot be a conviction on the testimony of a single witness, unless such testimony is corroborated sufficiently to overcome the oath of the accused and the presumption of his innocence, and *held*, BIGGS, J., dissenting, that the evidence in the case at bar was insufficient under this rule.

3. **Evidence**: MATTER OF OPINION. What a witness understands or thinks is not competent evidence; it falls within the rule which prohibits witnesses from stating their conclusions.

*Appeal from Pulaski Circuit Court.*—HON. C. C. BLAND, Judge.

REVERSED (*and defendant discharged*).

*W. H. Murphy, L. F. Parker* and *Matt. G. Reynolds,* for appellant.

*J. L. Johnson,* for respondent.

THOMPSON, J.—This is an indictment under Revised Statutes, 1889, section 3668, for wilfully making a corrupt and false affidavit. The statute is as follows : " Every person who shall wilfully, corruptly and falsely, before any officer authorized to administer oaths, under oath or affirmation, voluntarily make any false certificate, affidavit or statement of any nature, for any purpose, shall be deemed guilty of a misdemeanor, and shall upon conviction be punished by imprisonment in the county jail not less than six months, or by fine not less than $500.

The charging part of the indictment is as follows : " That one John T. Miller, late of the county and state aforesaid, at and in the county of Pulaski, and state of Missouri, on the twenty-first day of December, 1888, did then and there unlawfully, wilfully, corruptly and falsely before S. J. Manes, a justice of the peace within and for the county of Pulaski, state of Missouri, duly authorized by law to administer oaths and affirmations, did, for the purpose of obtaining from one C. D. Wale the sum of $10, under oath and affirmation, voluntarily make and subscribe a certain false statement and affidavit in words and figures as follows, to-wit : ' State of Missouri, county of Pulaski, John T. Miller, being duly sworn, upon his oath states that, to the best of his knowledge, in October, 1884, he never made any wager or bet with C. D. Wale on the presidential election between James G. Blaine and Grover Cleveland above the amount of $10, and that he never at any time admitted in the presence of anybody that he did bet above that amount.' Whereas in truth and in fact the said John T. Miller did, in the month of October, 1884, make a wager and bet with the said C. D. Wale, on the presidential election between James G. Blaine and Grover Cleveland above the amount of $10, and that he did admit in the presence of several persons, to-wit, S. J. Manes, F. M. Henry, Geo. W. Hendricks

and C. D. Wale, and to other persons to these jurors unknown, that he did bet with the said C. D. Wale, above the sum of $10, to-wit, the sum of $20 ; and so he, the said John T. Miller, then and there well knew, and that the said John T. Miller at the time of making the said affidavit and statement aforesaid, under oath as aforesaid, well knew the same to be wholly false, untrue and corrupt in every particular, against the peace and dignity of the state."

The defendant was found guilty and sentenced to pay a fine of $500.

The evidence for the state, as preserved in the bill of exceptions, was as follows :

C. D. Wale being sworn, testified in substance as follows : "Sometime prior to the election in the fall of 1884, Mr. Miller, the defendant, came to my drugstore in the town of Richland, in this county, and he and I got into a discussion of politics, and we made a bet of $20 on the result of the election between James G. Blaine and Grover Cleveland for president, I betting on Cleveland and the defendant on Blaine. We staked $10 in the hands of a stakeholder, I do not remember who, and Miller not having all the money to stake, we agreed that $10 should be on honor. Sometime after the election I saw Miller, and he acknowledged that I had won his money and the $10 that was staked was turned over to me, and the defendant told me he would pay the balance as soon as he could. I met Miller several times afterwards and he always promised to pay me, and told me he would haul wheat to pay me. Matters went on this way until the fall of 1888, and defendant was in Richland again and proposed to make another bet on the result of the election between Cleveland and Harrison ; so we made a $10 bet on that election, and the money was staked in the hands of one Williams. After this election came off and he wanted his money ( I had told the stakeholder Williams not to give it to him), I said

to Miller that I had won $10 off him on the other election and it was now a stand-off, and I and he were even, and I would just take my $10 down and he his, and we would be even. Defendant then for the first time denied that he had made such a bet in the fall of 1884, and insisted on having his money, and I told the defendant that he had made such a bet, but he said he had not, and insisted on having his money on the last bet; so I said to him, 'John Miller, if you will go before an officer and make affidavit that you never made such a bet, I will let the stakeholder pay you the money,' and defendant and I went before Mr. S. J. Manes, and he made the affidavit, and I told the stakeholder to give him the money and he took it. I afterwards sued him on a debt of $5 I had loaned him, and also included the $10 bet, and on trial he claimed that the $10 was a gambling debt and he would not pay it, and defeated the suit that far, I only getting the judgment for $5 and interest on same."

H. C. Murphy swore that he was in the drugstore and heard Wale and Miller talking about betting, and understood the bet to be for $20, but was busy at the time and did not pay very particular attention.

The affidavit of Miller, described in the indictment, was put in the hands of S. J. Manes, who swore that defendant subscribed to it and was sworn to it by him as justice of the peace, which office he then held. The affidavit is in words and figures following: "State of Missouri, county of Pulaski. John T. Miller, being duly sworn upon his oath, states that, to the best of his knowledge, in October, 1884, he never made any wager or bet with C. D. Wale on the presidential election between James G. Blaine and Grover Cleveland above the amount of $10, and that he never at any time admitted in the presence of anybody that he did bet above that amount." It was read to the jury; and S. J. Manes further testified that C. D. Wale brought the suit before him for $15.35, and that Miller claimed that

the $10 was a gambling debt, and the law would not allow judgment for such a debt, and the judgment went for $5.35.

Geo. Hendricks, one of the jurors in trial before S. J. Manes, justice of the peace, also swore that Miller claimed that $10 of the debt sued on was a gambling debt, and the jury gave the judgment for $5.35, leaving out the part claimed to be a gambling debt.

This was all the evidence in substance offered by the state.

The defendant offered evidence to sustain the issues in his behalf as follows:

John T. Miller, the defendant, swore that he never made a $20 bet with C. D. Wale on the result of the election between Grover Cleveland and J. G. Blaine in the fall of 1884, but he did bet $10 with him, and the money was staked in the hands of John Short, stake-holder, and that C. D. Wale proposed to bet $20, but he did not have but $15 in money and told Wale that he could not spare but $10; that there was nothing said about $10 on honor; that he never admitted that he owed Wale $10 on such a bet; that he had borrowed $5 from Wale, and Wale asked him for what he owed him several times, not mentioning what the items were, and he (Miller) always told him that he would pay him as soon as he got the money, and that he never heard of the $10 honor bet until after the election in the fall of 1888, when he (Miller) wanted the $10 that he won from Wale, and it was then for the first time that Wale claimed that Miller owed him $10 on the election of 1884.

Two other witnesses that were in the drugstore in the fall of 1884 and heard the bet, corroborated Miller in his statements.

This was all the evidence.

I. A majority of the court are of opinion that the jury ought to have been instructed to return a verdict for the defendant. The manifest purpose of the prosecution was either to use the machinery of the criminal

law to enforce the payment of a gambling debt, or to punish its non-payment. The principle of public policy which repels parties from civil courts in such cases will, for reasons even more strong, repel them in criminal cases. The state is under no more obligation in criminal, than in civil, cases, to open its doors to investigate the truth or falsehood of the assertions made by the parties to such transactions in respect of them. An oath falsely made for the purpose of influencing a stakeholder in the payment of a gambling wager is not, in the view of a majority of the court, such a corrupt oath as the statute intends to reach and punish, for the reason that it is not an oath either required, or authorized, or allowed, in any proceeding known to the law, but is an oath taken in furtherance of a proceeding condemned and made criminal by the law. If this prosecution is to be sustained, then whenever a dispute arises between two gamblers about a so-called "debt of honor," and one of the gamblers makes an affidavit as to his version of the affair, the criminal courts can be called in, at the instance of the other gambler, to settle the question which is right. The end of this prosecution, if the conviction is allowed to stand, will be to punish the defendant *criminally* for a matter in respect of which the courts will not aid the prosecuting witness *civilly*, and a majority of the court think that the courts do not sit for any such purpose. In this view Judge ROMBAUER concurs and Judge BIGGS dissents.

II. A majority of the court are also of opinion that the evidence has not been corroborated by such evidence as is required to sustain a conviction in cases of this kind. Under this statute, as in prosecutions for perjury, there can be no conviction on the testimony of a single witness to the falsity of the affidavit; otherwise it would be merely a case of oath against oath. Formerly, in prosecutions for perjury, it was held that two witnesses to the principal fact,—the falsity of the testimony upon which the perjury was assigned,—were

necessary. "But," as was said by the supreme court
of this state, speaking through Judge WAGNER, "this
strictness has long since been relaxed; the true prin-
ciple of the law being merely this, that the evidence
must be something more than sufficient to counter-
balance the oath of the prisoner and the legal presump-
tion of his innocence. The oath of the opposing witness,
therefore, will not avail, unless it be corroborated by
other independent circumstances. But it is not pre-
cisely accurate to say that these additional circum-
stances must be tantamount to another witness. The
same effect being given to the oath of the prisoner as
though it were the oath of a credible witness, the scale
of evidence is exactly balanced, and the equilibrium
must be destroyed by material and independent circum-
stances, before the party can be convicted. The addi-
tional evidence need not be such as, standing by itself,
would justify a conviction in a case where the testimony
of a single witness would suffice for that purpose, but
it must be at least strongly corroborative of the testi-
mony of the accusing witness; or in the quaint but
energetic language of PARKER, C. J., 'a strong and
clear evidence, and more numerous than the evidence
given for the defendant.'" *State v. Heed*, 57 Mo. 252.

In this there was no "strong and clear evidence,"
nor any evidence which was "strongly corroborative"
of the evidence of the prosecuting witness Wale, within
the meaning of this language. The only evidence of
this kind was that of H. C. Murphy, who testified as
above stated, that he was in the drugstore and heard
Wale and Miller talking about betting, and *understood*
the bet to be for $20, but was busy at the time and *did
not pay very particular attention*. This was no evi-
dence as to any *fact* at all, but only evidence as to what
the witness *understood*. If objected to, it would not
have been admissible under the rules of evidence.
What a witness *understands or thinks* falls within the

rule which prohibits witnesses from stating their con-
clusions. *Phares v. Barber*, 61 Ill. 271. The "impres-
sions" of a witness fall within the same category,
*understanding* and *impression* being nearly similar in
meaning; and this court has held that, where a witness
cannot testify as to his *knowledge*, it is not competent
for him to give his impressions. *Nelson Mfg. Co. v.
Mitchell*, 38 Mo. App. 321. Judge ROMBAUER concurs
in this view of the evidence; Judge BIGGS dissents.

It is ordered that the judgment of the circuit court
be reversed and the defendant discharged. .

### DISSENTING OPINION.

BIGGS, J.—If the purpose of this prosecution was
either to force the defendant to pay a gambling debt or
to punish him for its non-payment, I would readily
agree to his discharge. But I do not so read or under-
stand the record. If the state's witnesses are to be
credited, the defendant made a false affidavit to get $10,
the. property of the prosecuting witness. This is the
offense charged and proved, when stripped of verbiage
and varnish.

I have always understood that in criminal cases the
appellate jurisdiction of this court was exhausted, when
it was determined that the act of the accused, as charged
in the indictment, was an offense against the law; that
the indictment was in due form, and that the conviction
had been obtained according to the forms and require-
ments of criminal procedure.

The sufficiency of the indictment in the present
case is not questioned, and if we adhere to the doctrine
of this court, as declared in the case of *State v. Boland*,
12 Mo. App. 74, the defendant certainly violated the
statute and subjected himself to a criminal prosecution,
if the affidavit was false, and he made it for a corrupt
purpose. If it was false, it was certainly corrupt as
abundantly appears from the defendant's own admis-
sions. He did not make the affidavit to induce the

stakeholder to give him his own money, but he made it to get money from the stakeholder, to which he had no legal or moral right.

The real question in the case is, was the falsity of the affidavit established by evidence, which, in law, is deemed sufficient to make out a case of perjury? In other words was the testimony of the prosecuting witness corroborated by other material evidence or independent circumstances? The majority of the court are of the opinion that the state's evidence falls short of this requirement. The reading of the record leads me to a different conclusion. If the testimony of the witness Murphy be ignored, that of S. J. Manes and George Hendricks is in the case. The testimony of these two witnesses was to the effect that the prosecuting witness sued the defendant before a justice of the peace for $15.35 in which was included the $10 which it was claimed that the defendant owed on the bet in 1884; that on the trial the defendant "claimed that the $10 was a gambling debt, and the law would not allow judgment for such a debt." It strikes me that this was a plain and unequivocal admission that he had made the debt. If he did not in fact make it, why was it that this defense was not interposed, instead of seeking shelter under the gambling act?

I think the judgment of the circuit court ought to be affirmed.