## STATE v. ANNA MARKS.

EVIDENCE — CHARACTER — IMPEACHMENT — FORM OF IMPEACHING QUESTIONS—CHARGE OF THE COURT.

After the defendant in a criminal case had testified in her own behalf as a witness, the prosecution called a witness in rebuttal for the purpose of impeaching her character, and propounded the following question: "Do you know her reputation in that community for truth, honesty, and integrity?" *Held* improper; that, in impeaching the credibility of a witness, the inquiry must be confined to the general reputation of the witness in the locality referred to.

After a witness is shown to have knowledge of the general character of the witness sought to be impeached, the following form of questions is *held* proper: "Do you know what the general reputation of John Doe is for truth and veracity in the neighborhood where he resides?" If the question is answered in the affirmative, the next question will be: "What is that

reputation,—good or bad?" If the answer is "Bad," the further question may be put: "From that reputation, would you believe him on oath in a matter where he is personally interested?"

When the general reputation of a person accused of crime is attacked, the date of the inquiry should be limited to a period not later than the date of the arrest.

Section 3876, Comp. Laws Utah, 1888, was intended to allow the impeachment of a witness only so far as the general character of the witness is in issue in the case. When a defendant in a criminal case testifies in his own behalf, he places his general character for truth and veracity in issue, but not his character for honest and integrity; and his character in these respects cannot be inquired into unless he voluntarily places them in issue.

Where the defendant introduced evidence of her general good character, it is error for the court to instruct the jury that they should draw no unfavorable inference of the defendant from the fact that she had offered no proof as to her general good character.

(No. 864. Decided Feb. 4, 1898.)

Appeal from the Sixth district court, Juab county. E. V. Higgins, *Judge.*

Anna Marks was found guilty of an assault with a deadly weapon, with intent to do bodily harm, and appeals from the judgment. *Reversed.*

*Powers, Straup & Lippman,* for appellant.

*A. C. Bishop, Atty. Gen., Benner X. Smith, E. D. Pike,* and *E. A. Wedgwood,* for respondent.

MINER, J.:

An information was filed in Juab county, charging the defendant with the crime of making an assault upon one Patrick Shea, with intent to commit murder. Upon trial, the defendant was found guilty of an assault with

a deadly weapon, with intent to do bodily harm, without just cause or excuse. Thereupon the court pronounced judgment, and the defendant appealed to this court, alleging errors in the admission and rejection of testimony, and in the charge of the court to the jury. At the time this difficulty occurred, Patrick Shea was, with others in his employment, engaged in digging post holes and building a fence along a lot adjoining the residence of the defendant in the rear. This lot was vacant, and had been used by the defendant as a roadway to her coal sheds for several years. Both parties claimed the right to the possession of the land, and each was endeavoring to keep possession of the lot when the defendant discharged the revolver.

After the prosecution had rested its case, the defendant was called, and testified in her own behalf, but no witnesses were called to sustain her reputation for truth, honesty, and integrity in the first instance. The prosecution then called two witnesses who testified that they had resided in Eureka for several years, and knew the defendant. Thereupon the prosecution put the following question to each witness: "Do you know her reputation in that community for truth, honesty, and integrity?" The question was objected to as incompetent, immaterial, and irrelevant, and that the prosecution could not attack the character of the defendant until it had been put in issue by evidence, and also raised the objection that the general reputation of the defendant witness for truth and veracity could only be inquired into, and that the question was improperly framed, in that it did not embrace the general reputation of the witness in the community where she resided. The objection was overruled, and the defendant excepted. The witness answered, "Yes," and that her reputation was bad. The form of the question was im-

proper. The general reputation of every witness, for truth and veracity is open to question. In impeaching the credibility of a witness, the inquiry must be confined to the general reputation for truth in the neighborhood or community where he is best known and resides, or has resided, and of those who can state what is generally said of the person by those among whom he dwells, or with those with whom he is chiefly acquainted. The word " general" should always be used in propounding the question. When character is a fact to be established, it may be proved by another fact, namely, general reputation. In ascertaining what that general reputation is, it is important to call those witnesses who are acquainted with it generally. A person may have a bad reputation among a very limited set of people, or among his personal enemies, while his general reputation in the community would be good. So a person may have a limited reputation, and a witness may truthfully testify that he knows it, and that it is bad; while the general reputation in the community may be unknown to the witness, or, if known, such reputation may be good with reference to the speech of the people generally. As a general rule, the question allowed to be asked in such cases is: " Do you know what the general reputation of John Doe is for truth and veracity in the neighborhood in which he resides?" If answered in the affirmative, the next question would be: " What is that reputation,—good or bad?" If the answer is, " It is bad," the further question may be put as follows: " From that reputation, would you believe him on oath in a matter where he is personally interested?" The English and American doctrine with reference to the propriety of allowing the latter question, with numerous authorities supporting it, is laid down in *Hamilton* v. *People*, 29 Mich. 185, and *Keator* v. *People*, 32 Mich. 486.

The American decisions, instead of shaking the English doctrine, are found to be very decidedly in favor of allowing the question to be asked, and this has become the settled rule in many of the states. Whart. Cr. Ev. § 487; 1 Greenl. Ev. § 461; *Leonard* v. *People,* 27 Mich. 145; *Kessler* v. *People,* 32 Mich. 486; *People* v. *Finley,* 8 Or. 46; *Teese* v. *Huntington,* 23 How. 11; *U. S.* v. *Vansickle,* 2 McLean 218; *Bucklin* v. *State,* 20 Ohio 22; *Cary* v. *Smith,* 16 Ga. 7; Bradner Ev. §§ 13, 16; *State* v. *Howard,* 9 N. H. 485.

The inquiry concerning the general reputation of a person accused of crime, who has testified as a witness, or otherwise placed his reputation in issue, should be confined to a date not later than the commission of the alleged offense, or at least not later than the period when the arrest was made, because the reputation of the accused at the time of the trial would be injuriously affected by the offense itself when made known. *People* v. *Brewer,* 27 Mich. 134; *State* v. *Kinsley,* 43 Iowa 294; *Wroe* v. *State,* 20 Ohio St. 461; Whart. Cr. Ev. 62, 63.

There is still another reason why the same question which embraced the reputation of the accused for truth, honesty, and integrity was improper. The general character of a defendant cannot be put in issue unless it is voluntarily placed in issue by the accused. When the accused testifies concerning the matter complained of, or offers evidence of his good character for truth, then the question of his truthfulness and credibility as a witness is placed in issue, and his general reputation for truth and veracity could be shown, as affecting his credibility and truthfulness as a witness; but his character for honesty and integrity, not being in issue, cannot be attacked or placed in issue by the prosecution by proof of his general reputation concerning his character for honesty and integrity.

The prosecution rely upon section 3876, Comp. Laws Utah 1888, which provides that "the credibility of a witness may be drawn in question, by the manner in which he testifies, by the character of his testimony, or by evidence affecting his character for truth, honesty or integrity," and claim that the testimony was proper under this statute. We are of the opinion that this statute was intended to allow the impeachment of a witness only so far as the general character of the witness was in issue in the case. A defendant in a criminal case, charged with an assault with intent to kill, places his character for truth and veracity in issue when he testifies in the case, but not his general moral character. The jury are entitled to know whether his testimony is true, and what credence can be placed upon his testimony as a witness. Unless he voluntarily opens up the question of his honesty and integrity, by offering proof upon that subject, he is protected from further scrutiny into his general character for honesty and integrity. The question of his general character for dishonesty is not allowed to be considered as an issue upon impeachment, unless it is in issue, or is voluntarily placed in issue. In all cases where evidence is admitted touching the general character of a party, it ought to bear reference to the nature of the charge against him,—as for instance, if a man is accused of theft, that he has been reputed an honest man; if of rape, that of virtue and morality; if of treason, a man of loyalty; if of assault, a peaceable, orderly man; if of criminal fraud, embezzlement, theft, and false pretenses, honesty and integrity. Greenleaf says: "In all cases where evidence is admitted touching the general character of a party, it ought manifestly to bear reference to the nature of the charge against him." 1 Greenl. Ev. (12th Ed.) § 54. The same author

16 Utah—14

says: "Evidence, when admissible, ought to be restricted to the trait of character which is in issue, or, as it is elsewhere expressed, ought to bear some analogy and reference to the nature of the charge; it being obviously irrelevant and absurd, on a charge of stealing, to inquire into the prisoner's loyalty, or, on a trial for treason, to inquire into his character for honesty in his private dealings." 3 Greenl. Ev. (12th Ed.) § 25; *State* v. *Beal*, 68 Ind. 345; Phil. Ev. p. 490.

In the case of *State* v. *Beal*, 68 Ind. 346, the court said: "Where a defendant in a criminal case elects to testify in his own behalf, he occupies the position of both defendant and witness, and assumes the rights, privileges, and disabilities which respectively attach to both these relations to the cause. By electing to testify, he forfeits no right which has already attached to his character as defendant, but simply, in addition thereto, becomes also a witness in the cause. In his capacity as a witness, he testifies under the same general rules which govern other witnesses in criminal cases. His general moral character cannot be attacked for the purpose of his impeachment, but his character for truth may." Mr. Justice Campbell, in *Leonard* v. *Pope*, 27 Mich. 146, said: "Very likely, a man who steals will lie also; but there can be no occasion to enlarge the rule, because he is quite as likely to get such a reputation as he deserves for want of veracity as for want of honesty. And, if he has not obtained a bad reputation for truth, it would be a very unreasonable assumption to claim that he ought to have it. The whole doctrine of impeachment, although necessary in many cases, is so often resorted to where the local gossip turns out to be unfounded and malicious that no good purpose would be subserved by opening the door any wider for the reception of such rumors." We hold that the reputation of the defendant for

honesty and integrity was not in issue in this case, and that the question propounded was improper in form. *State* v. *Beal*, 68 Ind. 345; *State* v. *Bloom*, Id. 54; *Leonard* v. *Pope*, 27 Mich. 145; *Adams* v. *People*, 9 Hun 89; *State* v. *Robertson* (S. C.), 1 S. E. 443; Whart. Cr. Ev. § 491; *U. S.* v. *Vansickle*, 2 McLean 219; Bradner Ev. §§ 11, 13; *People* v. *White*, 14 Wend. 111; *Com.* v. *Webster*, 5 Cush. 295; *State* v. *Dalton*, 27 Mo. 13.

After the prosecution had offered evidence tending to show that the reputation of the accused for truth, honesty, and integrity was bad, the defendant offered evidence tending to show that the general reputation of the defendant for truth, honesty, and integrity was good. The court charged the jury upon the subject as follows: "You are instructed that the character of the accused person is in law presumed to be good, until the contrary appears from the evidence, and that the defendant is under no obligation to prove a good character till his character is in some manner attacked; and you will not be justified in drawing any unfavorable inference of the defendant from the evidence from the fact that she has offered no proof as to her general good character in this case." This instruction was at least misleading. The jury could readily infer from it either that the defendant had not offered any evidence in support of her general good character, or that the court did not attach any weight to the testimony offered by the defendant in support of her general good character. The instruction was doubtless an oversight on the part of the court, but it was nevertheless erroneous and injurious to the defendant.

For the errors referred to, the judgment of the lower court is reversed, the cause remanded, and a new trial granted.

ZANE, C. J., and BARTCH, J., concur.