## STATE v. PRATT.

Where a joint complaint which has been filed in the circuit court on holding some of the accused parties to answer was subsequently read to another who was accused therein, on his preliminary hearing before the magistrate, in the absence of anything to the contrary, it will be presumed that the complaint was authoritatively returned to the magistrate for use at the hearing.

The mere act of transmitting to the circuit court the entire record of a preliminary hearing of some of those accused in a joint complaint does not impair the power of the magistrate on a subsequent hearing as to another, accused therein.

Where several persons were held to answer for perjury on a joint complaint before a magistrate, a separate information in the circuit court as to one of the parties accused does not make the crime charged therein a different offense from that charged in the complaint, on the theory that under Rev. Pen. Code, § 27, providing that all persons concerned in the commission of a crime are principals, the joint complaint was for a joint offense, since section 169 provides that every one willfully procuring another person to commit perjury is guilty

of subordination of perjury, a separate offense; and hence section 27, making a principal, of an accessory before the fact, is not applicable to the crime of perjury.

In a prosecution for perjury, where defendant' had been accused with others in a joint complaint before a committing magistrate, but was tried on a separate information, if there is no valid claim of prejudice on account thereof, it will not warrant a reversal, even if the parties might have been jointly charged and tried for the crime.

In a prosecution for perjury, where the information alleges that the defendant was sworn by the court at the time of the alleged perjury, and the evidence shows that the oath was administered by the duly elected, qualified, and acting clerk in open court, in the presence of the presiding judge, there was not a fatal variance.

In a trial for perjury alleged to have been committed on the trial of a certain case, the clerk's authenticad minutes and the record of the trial and proceedings in that case were admissible after proper identification.

To authorize a conviction for perjury, there must be two witnesses testifying to the falsity of the statement, or one witness with strong corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the accused and the legal presumption of his innocence.

In a prosecution for perjury, evidence considered and **held** insufficient to sustain a conviction.

(Opinion filed, May 29, 1907.)

Error to Circuit Court, Lyman County. Hon. FRANK B. SMITH, Judge.

Henry Pratt was convicted of perjury, and brings error. Reversed and remanded.

*James Brown, J. G. Bartine,* and *A. B. Chubbuck,* for plaintiff in error. *S. W. Clark, Atty. Gen.,* and *William Williamson, State's Atty.,* for the State.

FULLER, P. J. Plaintiff in error was tried and found guilty of the crime of perjury, and the first ground urged for a reversal is that the accused had neither had nor waived a preliminary examination before a committing magistrate prior to the filing of the information by the state's attorney. On the 5th day of July, 1905, a sworn complaint was filed with a justice of the peace charging David Colombe, Jesse Moran, and plaintiff in error with the crime of perjury committed on the 19th day of January, 1903, at the trial of the case of the State of South Dakota against Andrew Nightpipe in the circuit court of Lyman county. Colombe and Moran

were placed under arrest, and held to answer at a preliminary hearing which took place on the 4th day of December, 1905, but plaintiff in error was not apprehended until the 10th day of January, 1906, which was after the magistrate had made his certified return of the record and proceedings to the circuit court as required by the statute. Section 158, Rev. Code Cr. Proc. However, when plaintiff in error was brought before the magistrate by virtue of a warrant previously issued, the original complaint, filed before that officer ,but subsequently transmitted to the clerk of the circuit court with the proper return thereon as to Colombe and Moran, was read to the accused by the magistrate, and, immediately upon being informed of the charge against him and of all his legal rights in the premises, he waived examination, and was held to answer to the circuit court then in session. In the absence of anything to the contrary the presumption is entertained that the joint complaint which of necessity had been field in circuit court was authoritatively returned to the magistrate before whom it was first filed for use at the preliminary examination of the accused as to whom the jurisdiction conferred upon the officer by statute had not yet been exercised. It will thus be seen that a sworn complaint was duly filed with the magistrate, charging plaintiff in error with a public offense, and that as to him no examination had ever been held or return made to the circuit court. Without any claim of resulting prejudice to plaintiff in error, the mere act of transmitting to the circuit court the entire record of the preliminary examination of Colombe and Moran in no manner impaired the powers of the magistrate as to him, and nothing has been urged in support of the point that constitutes a valid objection to the complaint.

It is further contended that but one act of perjury, in which the three defendants joined, was charged in the complaint before the magistrate, while an offense entirely different was described in the separate information under which plaintiff in error was tried and convicted. To justify the assertion it is urged that under section 27, Rev. Pen. Code, providing that "all persons concerned in the commission of a crime * * * are principals" that two or more persons may commit perjury collectively, and that it is then a joint offense, such as an affray, riot, conspiracy, and the like, but

in this view we cannot concur. As perjury does not require the participation of more than one person, and is scarcely susceptible of being committed in joint simultaneousness with others, the crime described in the separate information filed against plaintiff in error by the state's attorney in circuit court was the identical offense charged against him in the complaint under which he waived examination without an objection to its form or substance, and it is now too late to subject it to the strictest rules of technical pleading.

By the terms of section 169, Rev. Pen. Code, every person concerned in the commission of the crime of perjury, by willfully procuring another person to commit the act, is guilty of subornation of perjury, and, therefore, section 27 of the act, making a principal offender of an accessory before the fact though not present when the prime was committed, is not applicable to the crime of perjury. Assuming without deciding that with Colombe and Moran plaintiff in error might have been jointly charged and tried for the crime of perjury, no valid claim is made that the separate information and trial operated prejudicially to any of his substantial rights, and upon that ground no reason for disturbing the action of the court below is made to appear. Even where two or more persons are jointly charged with a felony, and neither demands a separate trial, they may be tried together or separately in the discretion of the court. Section 358, Rev. Code Cr. Proc. The information is so clear and specific as to all the essential elements of the offense and alleged statements of the accused constituting perjury that the trial court was fully justified in overruling the demurrer interposed, on the ground that facts sufficient to constitute a public offense are not stated therein, and to copy therefrom or give the point any further consideration in this opinion would serve no useful purpose.

The January, 1906, term of the circuit court being in session at the time plaintiff in error waived the preliminary examination and was held to answer, the act of granting the state a postponement at such term to the following term when the trial took place did not entitle the accused to his discharge under section 630, Rev. Code Cr. Proc., which reads as follows: "If defendant, prosecuted for a public offense, whose trial has not been postponed upon his appli-

cation, is not brought to trial at the next term of court in which the indictment or information is triable, the court must order the prosecution to be dismissed, unless good cause to the contrary be shown." As the state's showing for a postponement was ample, and granted only to the next term in which the case could be tried, there was no abuse of discretion nor legal necessity for ordering the prosecution dismissed when regularly reached for trial at such term.

Nor is there any merit in the contention that a reversal must follow on account of a fatal variance between the pleading and the proof as to the oath taken by plaintiff in error. True, it is alleged in the information that he was sworn by the court, while the undisputed evidence shows that, by the duly elected, qualified, and acting clerk, the oath was administered in open court in presence of the presiding judge, and the allegation thus contested is thereby amply sustained. Under the title "Perjury," 9 Encyclopedia of Evidence, p. 754, we quote as follows: "Proof that an oath was administered in the presence of the court by any officer authorized so to do is sufficient to sustain an allegation that the person was sworn by the court or in court." The following cases are to the same effect: Keator v. People, 32 Mich. 484; Oaks v. Rodgers, 48 Cal. 197; State v. Caywood, 96 Iowa, 367, 65 N. W. 385; Cutler v. Territory, 8 Okl. 101, 56 Pac. 861; State v. Spencer, 6 Or. 152; Server v. State, 2 Blackf. (Ind.) 35; 2 Whart. Cr. Law, §§ 1257, 1287, 1315.

After proper identification, the clerk's authenticated minutes and the record of the trial and proceedings in the case of State of South Dakota against Andrew Nightpipe were properly admitted in evidence, and the assignment of error based upon an objection thereto is not maintainable. It seems to be well settled that such records are admissible, for the purpose of showing the jurisdiction of the court and the pendency of the action at the trial of which it is alleged the crime of perjury was committed, and it was held to be the best evidence of guilt that could be produced in the case of United States v. Walsh (C. C.) 22 Fed. 644, but here we are not called upon to go to that extent nor to sanction the doctrine therein announced. As the record so offered and received in evi-

dence disclosed only the nature of the crime charged against Night-
pipe, the regularity of the proceedings and the jurisdiction of the
court to hear and determine the case, and contained nothing that
could have been considered by the jury as probative evidence of
the false swearing charged in the information before us, the case
is not within any exception to the rule requiring the court
either upon or without the request of counsel for the accused to
limit or restrict its application. State v. Brown, 111 La. 170, 35
South 501; Franklin v. State, 38 Tex. Cr. R. 346, 43 S. W. 85;
9 Encyc. of Ev. 758. The record presented has been read through
to the end, and the objections of counsel to the admission and
rejection of testimony carefully considered, but nothing has yet
been found to justify a reversal on account of errors of law occur-
ring at the trial, and it would be needless to extend this opinion by
a separate discussion of each assignment of error.

Error is assigned upon the refusal of the court, at the con-
clusion of all the evidence to instruct the jury as follows: "You
are instructed that if the crime of perjury has been committed as
charged in the information in this case, the witness, Andrew Night-
pipe, was an accomplice in the commission of that crime, and a
conviction cannot be had on the uncorroborated testimony of an
accomplice. The defendant therefore cannot be convicted on the
testimony of Andrew Nightpipe, unless you find that Nightpipe's
testimony is corroborated by other independent evidence in the
case, tending to connect the defendant with the commission of the
offense. Such corroboration is not sufficient if it merely shows the
commission of the offense or the circustances thereof." As the
material substance of this instruction was confessedly made a part
of the court's charge, and given to the jury with greater minute-
ness in detail than requested, the assignment of error appears to
have been discussed only in support of a motion to advise an ac-
quittal, on the ground that there was not sufficient corroborative
testimony. Strictly speaking, what has been held in our former
decisions as to section 364, Rev. Code Cr. Proc., does not deter-
mine the quantum of corroborative testimony necessary to justify
a conviction for the crime of perjury, and there appears to be
nothing in the statute that absolutely controls in such cases. Under

the earlier rule of the common law, the crime of perjury could not be established without two credible witnesses, each swearing directly that the evidence given by the accused was false; but, according to the modern doctrine, one credible witness is sufficient, when fortified by positive testimony or reliable circumstances clearly tending to prove the charge, and such corroboration need not be equivalent to another witness of similar character. The prevailing doctrine which commends itself to the approbation of the courts is stated in the case of Schwartz v. Commonwealth, 21 Am. Rep. 365, 27 Grat. 1025, as follows: "No rule is perhaps better settled than that to authorize a conviction of perjury there must be two witnesses testifying to the falsity of the statement, or one witness with strong corroborating circumstances of such a character as clearly to turn the scale and overcome the oath of the party and the legal presumption of his innocence. This rule is founded upon the idea that it is unsafe to convict in any case where the oath of one man merely is to be weighed against that of another." From the array of supporting authority we cite the following: Gandy v. State, 23 Neb. 436, 36 N. W. 817; Galloway v. State, 29 Ind. 442; State v. Miller, 44 Mo. App. 159; Hernandez v. State, 18 Tex. App. 134; People v. Stone, 32 Hun (N. Y.) 41; Crusen v. State, 10 Ohio St. 259; Commonwealth v. Parker, 2 Cush. 212; Wells v. Commonwealth, 6 S. W. 150, 9 Ky. Law Rep. 658; Peterson v. State, 74 Ala. 34; United States v. Hall (D. C.) 44 Fed. 864. 10 L. R. A. 324.

Now, bearing in mind that the oath of one credible witness against the oath of the accused has never been held sufficient to overcome the presumption of innocence, and that the corroborative testimony or circumstances must be consistently probative and tending to establish the perjury charged, we proceed to an examination of the testimony of the various witnesses. It stands proved by the undisputed evidence that plaintiff in error was a witness at the trial of Andrew Nightpipe, charged with and convicted of the larceny of a certain gray horse on the 18th day of April, 1902, the same being the property of George Richardson, and after being duly sworn he testified in substance that he was present at Moran's place in January, 1902, and saw Andrew Nightpipe get the horse

from George Patterson, giving a brown horse and $20 in cash therefor. The only direct testimony that such sworn statement is false, and made pursuant to a scheme devised by the accused and others with Andrew Nightpipe to so testify on the trial of the case of State against Andrew Nightpipe, is that of Nightpipe himself who was convicted as charged in the indictment, although he testified at his trial that he got the horse in question from George Patterson at Moran's place in January, 1902. As Nightpipe stood before the court and jury a convicted felon and confessed perjurer, and had never thus testified until he had talked with George Richardson from whom the horse was stolen and had received his assurance of help in securing a pardon, it cannot be said that Nightpipe was a credible witness. The only claim that this testimony was corroborated rests upon the inference that Geo. Patterson was afflicted with pulmonary consumption, and therefore unable to be present at the Moran place in January, 1902, when the purported horse deal was consummated. John Colombe, against whom two indictments for stealing horses and cattle were pending in the United States court, testified that George Patterson had stayed at his place on the Rosebud Indian reservation about 45 miles from Moran's the most of the time for two or three years immediately prior to his death which occured in June, 1902; that during the fall of 1901 and the winter of 1902 he was able to ride out on horseback a distance of 20 miles and return; that about Christmas time of that year he said he was going to Moran's place when he left, riding on horseback in a northwesterly direction. The wife of John Colombe testified in substance that when George Patterson left their place about Christmas, 1901, he did not return until February, 1902. Louis Stead testified that she had known George Patterson for about eight years, and that he was sick about Christmas time in 1901; that toward springtime of 1902 she went down to John Colombe's house and stayed all the time for two months during which time Patterson could not go out of doors; that he had a bay horse with a white stripe in the face ,and that she did not know of his having any other horse. Alfred Nightpipe, a witness for the state, who had been convicted of stealing cattle and sentenced to the penitentiary, testified that George Patterson was sick

in October, 1901, and in February, 1902. David Eastman, as a witness for the state, testified that he saw George Patterson at John Colombe's in December, 1901, that he was pretty sick and weak, that he saw him again about the middle of May, 1902; he was lying in bed then at Colombe's house, and was pretty sick. George Richardson, sworn on behalf of the prosecution, testified as follows: "I am 56 years of age, and live in Westover, S. D. I have known the defendant, Henry Pratt, some six or seven years, and I was present at the trial of Andrew Nightpipe in June, 1903, who was on trial for stealing a gray horse belonging to me. I missed this horse about March, 1902, and did not see it again till about April 1903, when it was in charge of the boss farmer of Rosebud agency. When I missed it the horse was unbroke and was branded lazy R. R. on the left thigh. When I got it back the brand had been burned over into a Lazy B. B. The defendant Pratt testified on that trial that he was present and saw Andrew Nightpipe get this horse in trade from George Patterson, giving a brown horse and $20 for the gray in January, 1902, at Moran's place. I never promised Andrew Nightpipe a pardon. I had a conversation with him at Sioux Falls, in which he told me he was not the guilty party, that the horses had been stolen and turned over to him, and I advised him to tell the truth and I would do what I could for him. I had corresponded with him before in regard to this. I agreed to do what I could for him. He had promised to give me some information to stick some others, and had given me some information." Jesse Moran, who stood charged with perjury, testified that he was present at his father's place in January when Andrew Nightpipe procured the horse in question from George Patterson, and David Colombe testified to the same effect, going into the details of the transaction. Morris Walker testified on the part of the defense as follows: "I live at Rosebud agency, having lived there since 1889. I know George Patterson and have for two or three years. I saw him in 1902 at my place on Rock Creek, I think about 25 miles from John Colombe's. Louis Moran's place is north of mine. It was about February, 1902, I saw George Patterson. Patterson had a lumber wagon and team. He was going to Nebraska after corn. He stayed over night at my house, and started south the next morning."

From the foregoing testimony the inference is permissible, that, to subvert justice by keeping out of the penitentiary, Andrew Nightpipe swore at his own trial that he got the horse in January, 1902, of George Patterson at Moran's place, and, for the purpose of getting out of the penitentiary before the expiration of his sentence, he swore at the trial of plaintiff in error that he had thus deliberately committed the crime of perjury, and in view of all the circumstances his testimony is entitled to but slight credence, if any. In determining, therefore, the truth or falsity of his testimony, it was the duty of the jury to look into the motive which prompted it, and to consider that he was in no sense a credible witness. While such inconsistent statements might be sufficiently corroborated by circumstances tending to establish its truth, and therefore the falsity of that to which plaintiff in error had previously sworn, the negative evidence offered for that purpose was of inconclusive character, and as capable of being harmonized with the theory of innocense as with the probability of guilt.

For the reason that the evidence is insufficient to justify a verdict of guilty, the judgment of the trial court is reversed, and a new trial ordered.

CORSON, J., not sitting.