**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Clarence Eugene MOREHEAD, Defendant and Appellant.**

**No. 13343.**

Supreme Court of South Dakota.

Argued Oct. 2, 1981.

Decided Dec. 28, 1982.

Mark Smith, Asst. Atty. Gen., Pierre, for plaintiff and appellee, Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

Le Roy S. Lassegard, Mitchell, for defendant and appellant.

DUNN, Justice (on reassignment).

This is an appeal from a judgment of conviction of perjury pursuant to SDCL 22–29–1.[1] We reverse.

This is a companion case to *State v. O'Brien*, 318 N.W.2d 108 (S.D.1982), and arises out of the same factual setting. On December 10, 1978, a radiator system at the Northwestern Public Service (NWPS) substation ceased functioning because it was punctured with rifle shots. In October of 1979, Detective Ken Reinesch questioned Robert Granger, Gene Dog Soldier, Brent O'Brien, and Clarence Eugene Morehead (appellant) concerning the shooting. Responding to Reinesch's questions, appellant

---

**1.** SDCL 22–29–1 provides:

Any person who, having taken an oath that he will testify, declare, depose, or certify truly before any competent tribunal, officer, or person, in any of the cases in which such an oath may by law be administered, intentionally and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury.

stated he was with the above-named individuals on the night of December 10, 1978, and that Granger and Dog Soldier fired three shots while their car was stopped on a road near Mitchell, South Dakota. Although appellant did not know what they were shooting at, he was told several weeks later that they had fired at the NWPS transformer. Appellant was not under oath when the questions were asked, but Reinesch did reduce the questions and answers to writing and appellant signed it.

On June 30, 1980, Granger was tried on charges arising out of the alleged shooting incident. At trial, appellant was given use immunity to testify. Appellant denied he had been with Granger at the scene of the shooting and claimed instead that he was driving a truck to Rapid City, South Dakota, in the course of his employment. Appellant acknowledged making the prior statement to Reinesch, but denied the statement was true. At the close of the State's presentation, the case against Granger was dismissed. Soon after, appellant was charged with committing perjury during the Granger trial regarding his whereabouts on the evening of December 10, 1978.

At the ensuing trial, the State's case against appellant included: appellant's statement given to Reinesch, appellant's testimony given in the Granger trial, testimony of several employees of the firm where appellant worked, and testimony of Dog Soldier and Reinesch. At the close of the State's case, appellant moved to dismiss. The motion was denied by the trial court. At the close of all the evidence, appellant moved for mistrial and acquittal. Again, the trial court denied the motions. Appellant was convicted of perjury by the jury and sentenced to five years.

The sole issue we address is whether sufficient evidence was introduced at trial upon which the jury could base a verdict of guilty. As we have stated in the past, the only question for this court in

determining the sufficiency of the evidence is whether there is evidence in the record which, if believed by the jury, is sufficient to sustain a verdict of guilty beyond a reasonable doubt. *State v. Shank,* 88 S.D. 645, 226 N.W.2d 384 (1975). To establish sufficient evidence of perjury, there must be either two witnesses testifying to the falsity of accused's statement, or one witness plus strong corroborating evidence to overcome the legal presumption of appellant's innocence and his statement under oath. *State v. O'Brien, supra; State v. Pratt,* 21 S.D. 305, 112 N.W. 152 (1907).

Our review of the record reveals there was not even one competent witness under the *Pratt* test to establish that appellant was lying when he denied being present with Granger and other individuals on the evening of December 10, 1978, but asserted instead that he was driving a truck to Rapid City in the course of his employment. Our conclusion is supported by a review of the State's case.

Appellant's testimony at Granger's trial and his prior statement to Reinesch were admitted into evidence.[2] As we noted in *O'Brien, supra* at 111:

> Such evidence has sound corroborative value in determining the guilt of a party. Had the State been able to produce one competent witness under the *Pratt* test, these statements could have served to establish the necessary corroborative evidence upon which a jury could reach a verdict of guilty beyond a reasonable doubt. (citation omitted)

The minimum one necessary witness to establish appellant's presence on December 10, 1978, was not produced by Dog Soldier's testimony. Dog Soldier specifically denied shooting at the NWPS transformer on December 10, 1978, and alleged instead that he spent the evening cab driving with a friend. Dog Soldier's testimony was not impeached at trial by a prior inconsistent statement. A witness was produced, however, who con-

---

2. At no time does appellant assert the admission of the statements was error due to the immunity given appellant at the Granger trial.

tradicted Dog Soldier's testimony and asserted that Dog Soldier had ridden with him in a cab on the evening of December 9, 1978, not December 10, 1978. Two defense witnesses asserted the opposite and testified Dog Soldier was riding in the cab on December 10, 1978. The fact remains, however, that Dog Soldier never admitted being with appellant on the evening of December 10, 1978.

Two of appellant's fellow employees testified that their records did not show that appellant was driving a truck to Rapid City on the evening of December 10, 1978. Neither witness, however, could testify from personal knowledge whether appellant had left for Rapid City on the evening of December 10, 1978, or if in fact he had waited to depart on December 11, 1978. Even assuming such testimony were given, it would still not provide the one witness necessary to establish appellant's presence at the alleged shooting on December 10, 1978.

The other witnesses to testify on behalf of the State could not establish appellant's presence at the scene. One witness stated he had heard shots on the evening of December 10, 1978, and that he had seen the taillights of a car as it drove away. The other witness, Detective Reinesch, was simply used to introduce and discuss the prior statements by appellant, O'Brien and Granger. All of these statements had since been disavowed. Again, the evidence is, at best, corroborative in nature and does not provide substantive evidence supporting the State's case against appellant.

█ Since we find the State did not produce one witness who could competently testify to the falsity of appellant's testimony under oath, we conclude the State failed to present evidence sufficient to sustain a verdict of guilty. We find it unnecessary to address the other issues raised on appeal.

The judgment of conviction is reversed.

FOSHEIM, C.J., and WOLLMAN and MORGAN, JJ., concur.

HENDERSON, J., dissents.

1. *State v. O'Brien,* 318 N.W.2d 108 (S.D.1982).

HENDERSON, Justice (dissenting).

Once again, we probe into "the night the lights went out in Mitchell, South Dakota." Mr. O'Brien has successfully lied his way to freedom [1] and now the majority illuminates the path for Mr. Morehead's conspiratorial journey to the same end.

Truly this is a case of déjà vu, for the majority once more attempts to breathe life into the long dormant and antiquated law of perjury drawn from *State v. Pratt,* 21 S.D. 305, 112 N.W. 152 (1907). The pivotal requirement of *Pratt* is that at least one warm body (a witness) must testify that defendant's statement was untrue. Additionally, corroborative evidence must be introduced to establish the untruth.

As noted in my dissent in *O'Brien,* the *Pratt* rule is tethered to eighteenth century English case law. Over time as the courts realized that strict adherence to the old rule often produced unconscionable results, exceptions sprang forth. *See* Wigmore on Evidence, Vol. VII § 2040, Chadbourne Revision (1978). Since the result reached by the majority opinion herein is unconscionable as it fails to preserve the integrity of an oath "to tell the truth," Mr. Morehead's case provides fertile ground for an exception to *Pratt.*

As I set forth in *O'Brien,* the "documentary evidence exception" provides that when the accused creates direct documentary evidence, it replaces the need for a witness. *See* 88 A.L.R.2d 852 (1963). Under this exception, the danger of simply putting the testimony of one person against another is avoided. In short, the accused's statement provides tangible evidence of his testimonial flaw in a manner that the jury can observe themselves. The jurors, in a sense, are witnesses to the lies as they consider the document in the jury room and mirror the accused's testimony against it.

Indeed, Mr. Morehead provided quite an array of inconsistencies for the jury herein to reflect upon. A sampling reveals that Detective Reinesch took a signed statement

from Mr. Morehead wherein he admitted being with Mr. Granger and Mr. Dog Soldier when they destroyed the NWPS transformer. At Mr. Granger's trial, Mr. Morehead acknowledged making the signed statement, but then asserted it was untrue. Revealingly, Mr. O'Brien,[2] night companion of Mr. Morehead, had the same problem with the truthfulness of the signed statement which he gave Detective Reinesch.

Mr. Morehead's second story was that on the evening in question, he was employed driving a truck to Rapid City. However, two witnesses testified that his employer's records establish that Mr. Morehead was not so engaged. Mr. Morehead's story is as transparent as the comfort he takes in the *Pratt* test. The jury disbelieved him and convicted him of perjury and the trial judge sentenced him to five years in the State Penitentiary. I would choose to unfetter the cause of justice from *Pratt's* archaic analysis and remove Mr. Morehead's luxury of disregarding the solemn oath to tell the truth on the witness stand. The evidence to sustain the jury's verdict is not merely sufficient, it is overwhelming.[3] Throughout this trial, many questions were raised with respect to the evidence presented and the credibility of the witnesses. Exactly on point in this regard is *State v. Shank*, 226 N.W.2d 384, 387 (S.D.1975). "Where conflicting evidence is present, ... and the credibility of witnesses is in issue, then it is a question of fact for the jury." As per *Shank,* this Court has defined its function pertaining to the sufficiency of evidence and credibility questions on appeal, for this Court stated:

2. O'Brien, a then convicted perjurer, testified in this perjury trial on behalf of his night companion, Morehead.

3. A damning piece of evidence (unheeded by the majority) against Morehead was Exhibit 3 received in evidence without objection. It was a statement given by O'Brien in the early phase of investigation concerning the transformer damage. This statement related that O'Brien, Dog Soldier, Granger, and Morehead were near Hormel's (Author's note: the NWPS transformer was in the near proximity of Hormel's) on December 10, 1978, and that .22 caliber rifles were fired by Dog Soldier and Granger.

In determining the sufficiency of the evidence on appeal the only question presented to this court is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a finding of guilty beyond a reasonable doubt.

Justice is a search for truth. Our system of justice cannot endure where oath chameleons, masquerading as witnesses of truth, weave lies to ensconce one another. I would affirm the conviction and thus frustrate perjury as a journey to freedom.

Gary Lutgen, a court reporter, testified and read Morehead's testimony contained in the Granger trial and said testimony corroborates his presence at the transformer site. One Gerald Ruden further testified that, after the shots, he observed a car speeding from the scene with "Ford taillights, sort of rounded in shape." Ruden believed the car had an automatic transmission based upon the sound as it sped away. Later evidence circumstantially linked the type of car, a 1970 Ford LTD, which Morehead drove, with the kind that Ruden observed.