**UNITED STATES of America, Plaintiff-Appellee,**

**v.**

**Ricky Allen DAVIS, Defendant-Appellant.**

**No. 76–2857.**

United States Court of Appeals, Ninth Circuit.

Jan. 17, 1977.

Theodore G. Meeker (argued), of Corralis, Robinson & Meeker, Honolulu, Hawaii, for defendant-appellant.

Stephen D. Quinn, Asst. U. S. Atty. (argued), Honolulu, Hawaii, for plaintiff-appellee.

Before BROWNING and CHOY, Circuit Judges, and THOMPSON,[1] District Judge.

BRUCE R. THOMPSON, District Judge:

This is an appeal from the conviction of the defendant, Ricky Allen Davis, on seven counts of perjury pursuant to Section 1621 of Title 18, United States Code.

On October 18, 1975, a service station situated on the United States Naval Ammunition Depot at Lualualei, Oahu, Hawaii was burglarized. As the crime occurred within the exclusive jurisdiction of the United States, the FBI commenced an investigation into the matter. Shortly thereafter, a marine, Curt Allen Gustafson, became the target of the FBI investigation, as a result of fingerprints matching his being found at the scene of the burglary. At that time, Gustafson was assigned to the marine barracks at the Waikele branch of the Naval Ammunition Depot in Hawaii.

Special Agent Hilton J. Lui of the FBI, was assigned to the Lualualei burglary investigation. During the course of his investigation Lui questioned several marines

1. The Honorable Bruce R. Thompson, United States District Judge, District of Nevada, sitting by designation.

who were also stationed with Gustafson at Waikele, regarding any information they might possess concerning the burglary. As a result of information received during one such interview, Lui directed the attention to the defendant, Ricky Allen Davis, a fellow marine and an acquaintance of Gustafson.

On January 14, 1976, Lui interviewed the defendant. During the course of this interview, Davis admitted being a friend of Gustafson, but denied any knowledge as to whether Gustafson had played a role in the burglary. In early February, the federal grand jury convened in Hawaii for the purpose of investigating the burglary. Davis was subpoenaed to appear and to testify concerning his knowledge, if any, of Gustafson's involvement in the crime.

According to the testimony of Lui, Davis, upon receipt of the grand jury subpoena on February 3, 1976, desired to make a statement to the FBI. Lui testified that during the February 3rd interview, Davis indicated that he had been apprised of Gustafson's role in the Lualualei burglary by Gustafson himself during a conversation between the two.

During the course of this interview, Lui simultaneously took written notes of Davis' responses to various questions. Subsequent to this interview, but while still in the presence of Davis, Lui composed a written statement based on his notes and presented it to the defendant for his signature. Lui testified that before obtaining the defendant's signature, he read the statement out loud to Davis and instructed him to make any corrections or deletions he desired. With no corrections, additions, or deletions being made, Davis' statement as composed by Lui read as follows:

"About one and a half weeks before November 4, 1975, the approximate date Curt Gustafson left the Marine Corps, he mentioned to me and said that he went to Lualualei on the night of the burglary at the gas station and broke into this gas station which is located there between the road from NAVMAG Lualualei and Radio Transmitting Facility (RTF) Lua-

lualei. About two or three days later while we were going to the beach, we were driving on a deserted road in Makaha and Gustafson mentioned to me and pointed out an area we were passing as the area where the safe which they took from the burglary was dumped. I recall that Gustafson told me that they didn't get into the safe. Gustafson did not mention to me the other name of the individuals that participated in the burglary. Also, Gustafson did not mention to me of the other items.

"Gustafson did not mention any details to me as far as robbing the gas station."

After Davis was read the statement, he incorporated the following verification in his own handwriting.

"I make this statement consisting of two pages without any coercion against me and attest the statement is true and correct."

Davis then signed the statement.

Three days later, Davis had a slightly different version as to what transpired during the February 3 interview with Lui. In his appearance before the federal grand jury on February 6th, Davis, while under oath, denied having any knowledge as to who had robbed the Lualualei service station. He further denied that Gustafson had ever indicated to him, in any fashion, that he had ever committed the burglary.

When asked during the trial to explain the noticeable discrepancies between his testimony and that of Lui's, Davis testified that he had never told Lui anything concerning Gustafson's involvement in the burglary. In refuting the contents of the FBI statement that he had personally verified and signed, Davis' testimony is somewhat incredible. He recalled being read a statement by Agent Lui before signing it, but denied that the statement in evidence and the statement that he was read were the same. When asked if he had read the statement before signing it, Davis contended that he had only glanced at certain portions of the statement, and had apparently overlooked the sentence implicating Gustafson.

The defendant was charged with seven counts of perjury emanating from his testimony before the federal grand jury, and was subsequently convicted by a jury on all seven counts.

Counts I, III, V and VI all directly concern whether Gustafson even mentioned anything to Davis concerning his (Gustafson's) participation in the Lualualei burglary or his conduct on the particular night of the burglary. Count II is a much more general charge concerning whether Davis had any idea who had committed the Lualualei burglary. Count IV is based on defendant's denial before the grand jury that Agent Lui had carefully gone over the whole statement with Davis and that Davis had read the statement before signing it. Count VII of the indictment charged that the defendant committed perjury during his appearance before the federal grand jury when he denied telling Agent Lui that he was told of Gustafson's participation in the burglary by Gustafson himself.

■ This Circuit follows the traditional "two witness rule" which requires that the falsity of the defendant's statements must be proved by the testimony of two witnesses or the testimony of one witness, plus corroborating evidence. *Weiler v. United States*, 323 U.S. 606, 607, 65 S.Ct. 548, 89 L.Ed. 495 (1945); *Gebhard v. United States*, 422 F.2d 281, 286 (9th Cir. 1970). The corroborative evidence required need not be independently sufficient to establish the defendant's guilt, *United States v. Howard*, 445 F.2d 821, 822 (9th Cir. 1971); *Arena v. United States*, 226 F.2d 227, 234, 236 (9th Cir.), *cert. denied*, 350 U.S. 954, 76 S.Ct. 342, 100 L.Ed. 830 (1956) and may be circumstantial in nature. *Vuckson v. United States*, 354 F.2d 918, 920 (9th Cir.), *cert. denied*, 384 U.S. 991, 86 S.Ct. 1896, 16 L.Ed.2d 1007 (1966). This Circuit has held that the corroborating evidence is sufficient if it, together with the direct evidence, is inconsistent with the innocence of the defendant. *Arena v. United States*, supra, at 234. In *United States v. Weiner*, 479 F.2d 923, 927–28 (2d Cir. 1973), the court construed the rule requiring that the corroborating evidence be inconsistent with the innocence of the defendant to mean no more than

"such evidence must tend to substantiate that part of the testimony of the principal prosecution witness which is material in showing that the statement made by the accused under oath was false. This is to say that the two-witness rule is satisfied by corroborative evidence of sufficient content and quality to persuade the trier that what the principal prosecution witness testified to about the falsity of the accused's statement under oath was correct."

■ In the present situation, Lui testified at trial that during the February 3, 1976 interview with Davis, Davis admitted having a conversation with Gustafson, where he was told of Gustafson's involvement in the burglary. Lui's testimony was further corroborated by the introduction into evidence of the verified and signed statement of Davis. This statement amounted to a written admission by Davis and was entirely consistent with the testimony given by Lui. In *Vetterli v. United States*, 198 F.2d 291, 293 (9th Cir.), *vac. on other. grds.*, 344 U.S. 872, 73 S.Ct. 175, 97 L.Ed. 675 (1952), we emphasized:

"Admissions of a party charged with perjury, if made under such circumstances as render them clearly admissible, seem to us to have a sound corroborative value."

The defendant contends that the use of this signed statement to satisfy the corroborative evidence requirement of the two-witness rule amounts to bootstrapping in that the statement was written and composed by Lui. We disagree. Where one witness testifies to the fact of perjury, independent corroborative evidence suffices under the two-witness rule if it tends to confirm the truth of the witness's testimony in material respects and thereby induces belief in his testimony. Since the corroborative evidence need not be strong nor even independently sufficient in itself, it may be supplied by the defendant's own conduct. Once the two-witness rule is satisfied, it is for the jury to decide the trustworthiness of

the evidence, what weight should be accorded it, and the credibility of the witnesses. *Adams v. United States*, 191 F.2d 206, 207 (9th Cir. 1951). In addition to the testimony of Lui and the signed admission of Davis, further corroboration was provided by the defendant's testimony at trial.

Defendant Davis' testimony at the trial was so confusing and contradictory as to prompt cross-examination by his own counsel. Examples are given in the margin.[2] The jurors would have been quite justified in concluding that defendant had in fact admitted perjury before the grand jury in his trial testimony and had himself supplied the corroboration to satisfy the requirements of the two-witness rule.

■ The rule in the Ninth Circuit has long been established by the case of *Vedin v. United States*, 257 F. 550 (9th Cir. 1919). The principle that a defendant who testifies in defense of a perjury charge may by his own testimony supply the required corroboration is clearly stated in the following quotation from the *Vedin* opinion, at 552.

"The evidence for the prosecution, if it stood alone, would clearly be insufficient to sustain a conviction of perjury. It is not disputed that the earth removed by drilling holes by a hand drill, such as the plaintiff in error claimed to have drilled, would amount to but a few panfuls. The plaintiff in error testified that he did not measure the distances from the boundary lines, but only estimated them. It is too obvious to require discussion that the testimony of the witnesses for the government was insufficient to show, beyond a reasonable doubt, that the holes had not been drilled. If the plaintiff in error had stood upon his motion to dismiss, made at the close of the testimony, a different case would now be presented. But he waived his motion by testifying in his own behalf, and in the discrepancies of his own testimony as to the work done, and by whom it was done, and the rebuttal of portions thereof by the witnesses for the government, there is evidence tending to show that the affidavits were false. We are not convinced that the

2. "Q. (By Mr. Meeker) At the time of the—at the time the statement was written—Agent Lui wrote the statement out—did you read the statement?

"A. Not completely, no.

"Q. And did Agent Lui read the statement to you?

"A. Yes, he did. We went over it together.

"Q. At the time Agent Lui read the statement to you, did you realize and understand the statement said that Curt Gustafson left—on the date Curt Gustafson—let me read the whole statement: About one and a half weeks before November 4th, 1975, the approximate date Curt Gustafson left the Marine Corps, he mentioned to me and said that he went to Lualualei on the night of the burglary at the gas station and broke into the gas station which was located there.

Do you understand it to mean what I've just said to you—

"A. No.

"Q. —that Gustafson broke into the gas station and told you about it?

"A. No, I didn't.

"Q. Is the rest of that statement true?

"A. Yes, it is.

"THE COURT: I'm not sure I understand what that refers to. What's the rest of the statement? You mean the written statement?

"MR. MEEKER: Yes, the written statement, Your Honor.

"THE COURT: Oh, Exhibit 2?

"MR. MEEKER: Exhibit 2.

"THE COURT: Everything is true except that one part?

"THE WITNESS: Yes, sir.

\* \* \* \* \* \*

"Q. Do you remember saying to Agent Lui that he mentioned to me and said that he went to Lualualei on the night of the burglary at the gas station? Do you remember saying that?

"A. Yes.

\* \* \* \* \* \*

"Q. (By Mr. Quinn) What made you relate that safe to the robbery when you had talked to him—to Agent Lui the second time? What's the difference?

"A. Well, there wasn't any difference. It just popped up in my mind. He said just: Do you know anything at all about any—you know—about any kind of safe or anything or, you know, or thereof, you know, and I said: Well, there's one time when we were going down the road and he told me about the safe—about a safe being on the side of the road someplace.

\* \* \* \* \* \*

"Q. Ricky, when you signed that statement, did you feel you had to sign the statement?

"A. To make it officially true, I did, yes. Nobody was forcing me to sign it, but I did sign it because I felt that it was true."

court below erred in denying the motion for an instructed verdict."

Decisions of other courts are in accord: *Risher v. State*, 418 P.2d 983 (Alaska 1966); *People v. Sagehorn*, 140 Cal.App.2d 138, 294 P.2d 1062 (1956); *People v. Agnew*, 77 Cal. App.2d 748, 176 P.2d 724 (1947); *People v. Todd*, 9 Cal.App.2d 237, 49 P.2d 611 (1935).

■ The issue of multiplicious counts need not be considered, because the defendant did not suffer any prejudice as a result of the alleged multiplicity. The maximum sentence allowable under 18 U.S.C. § 1621 is a fine not to exceed $2,000, or a term of imprisonment not to exceed five years, or both. In the present situation, as to Count I, Davis was ordered to pay a fine of $500 and was placed on probation for a period of five years. As to the remaining counts, Davis was placed on probation for a period of five years to run concurrently with the probationary period of Count I. All the sentences run concurrently and are of equal length. Similarly, the sentence imposed upon the defendant did not exceed that which lawfully might have been imposed under any of the individual counts. Hence, any sentence imposed on the alleged multiplicious counts added nothing to the sentence imposed on Count I.

■ The defendant contends that even if his various convictions on the individual counts should be sustained, the government failed to prove that the defendant's perjurious statements related in any way to a material matter as specifically required in Section 1621.

The general rule which is followed in this Circuit is that the materiality requirement of a perjury indictment may be met by a general statement that the matter was material. *Gebhard v. United States*, supra, at 285; *Woolley v. United States*, 97 F.2d 258, 261 (9th Cir.), *cert. denied*, 305 U.S. 614, 59 S.Ct. 73, 83 L.Ed. 391 (1938). Such a statement was properly included in each of the individual counts of the government's indictment.

The defendant contends that he was prejudiced by the alleged improper remarks of the prosecutor given during both his opening statement and in his closing argument.

■ In his opening statement the government's attorney improperly indicated to the jury that it was his decision to subpoena the defendant to appear before the federal grand jury and informed the jury of his reason for making that decision. He was immediately admonished by the court who noted that these particular remarks almost amounted to personal testimony.

The manner in which the government's attorney imparted his own testimony regarding his initial personal evaluation of the case in his opening statement was objectionable. This mistake was inadvertent, however, and in light of the entire record did not affect the substantial rights of the defendant within the meaning of the harmless error rule.

■ The defendant also contends that he should be granted a new trial because of alleged prejudicial comments by the government's attorney given during his closing argument. Essentially, these alleged improper remarks, like those allegedly given in the opening statement, concern an area dealing with the government attorney's personal involvement in the case from its inception.

Although these remarks may have been improper, they were immediately objected to by the defendant and the jury was admonished to disregard them. These remarks were not sufficiently prejudicial to constitute reversible error.

AFFIRMED.