STATE of South Dakota, Plaintiff
and Appellee,

v.

Brent Jay O'BRIEN, Defendant
and Appellant.

No. 13337.

Supreme Court of South Dakota.

Argued Oct. 2, 1981.

Decided April 7, 1982.

LeAnn Larson LaFave, Sp. Asst. Atty. Gen., Winner, for plaintiff and appellee; Mark V. Meierhenry, Atty. Gen., Pierre, on brief.

John F. Cogley of Morgan, Fuller, Theeler & Cogley, Mitchell, for defendant and appellant.

YOUNG, Circuit Judge.

Defendant, Brent Jay O'Brien, appeals from the judgment of conviction of perjury entered following a jury trial on September 10–11, 1980. We reverse the conviction.

On December 10, 1978, an electric transformer near the Hormel plant at Mitchell, South Dakota, failed to function. Investigation disclosed that the radiator system at the Northwestern Public Service (NWPS) substation had been punctured by rifle shots. In October 1979, Officer Ken Reinesch (Reinesch) questioned Robert Granger, Eugene Morehead, Gene Dog Soldier, and defendant concerning the shooting. During that questioning, defendant stated that he had been with the other individuals on the night in question and that Granger and Dog Soldier had fired at the NWPS transformer. The statement given to Officer Reinesch was not made under oath but was reduced to writing by Officer Reinesch and signed by defendant.

On June 30, 1980, the State proceeded to try Granger on charges arising out of the alleged shooting incident. At that trial, defendant denied that he had been with Granger at the scene of the shooting, claiming instead that he was home in bed. Defendant admitted to making the prior statement to Officer Reinesch, but denied that the statement was true. At the close of the State's presentation, the case against Granger was dismissed. Shortly thereafter, the State charged defendant with having committed perjury during the Granger trial, alleging that he had given perjured statements as to his whereabouts on December 10, 1978.

The State's case against defendant consisted of: defendant's statement given to Officer Reinesch; defendant's testimony given in the Granger trial; and the testimony of Dog Soldier, Morehead, Granger, and Officer Reinesch. The State's key witness was Dog Soldier. Dog Soldier admitted that he had been drunk for a period of time immediately preceding December 10, 1978. He testified that he believed the shooting took place on December 9, 1978, and that he could not remember whether defendant had been present when he and Granger fired at the transformer. Over defendant's objection, Dog Soldier testified that Granger had told him that defendant was with them on the night of the shooting.

On cross-examination, Dog Soldier stated his belief that on December 10, 1978, he was cab driving with a friend, Kelly Straw. The State called Officer Reinesch to rebut this statement by introducing Dog Soldier's October 1979 statement. The substance of that statement corroborated his testimony on direct examination.

After introducing defendant's testimony in the Granger trial, the State called Morehead and Granger. Morehead was given use immunity to testify. He testified that he had not been with defendant and the others near the Hormel plant on December 10, 1978, and that his testimony at Gran-

ger's preliminary hearing and his unsworn statement to Detective Reinesch on October 4, 1979, were both false. The transcript of Morehead's testimony at both Granger's preliminary hearing and trial were introduced into evidence. Granger testified that he could not remember being with the others near the Hormel plant. He also denied telling Reinesch that the group had been together at the time of the shooting. The State recalled Officer Reinesch, who testified that Granger told him that he "thought" defendant had been with them on the night in question.

At the conclusion of the State's case, defendant moved for a directed verdict. The trial court denied the motion. At the close of all evidence, defendant sought to have Pattern Jury Instruction 1–17–8 added to those instructions already chosen by the trial court.[1] The State objected to the inclusion of the instruction on the grounds that the jury would be confused as to which statements were substantive evidence and which could be used only for impeachment purposes. The trial court denied defendant's request. No instruction was given relating to prior inconsistent statements.

### ISSUES

#### I.

Is there sufficient evidence upon which the jury could base a verdict of guilty of the offense of perjury? We hold that there was insufficient evidence.

#### II.

Are defendant's own statements made to Officer Reinesch and his testimony at the Granger trial substantive evidence for the jury's consideration? We hold that they are substantive evidence.

1. South Dakota Pattern Jury Instruction (Criminal) 1–17–8 reads as follows:

The credibility of a witness may be attacked by introducing evidence that on some former occasion he made a statement on a matter of fact or acted in a manner inconsistent with his testimony in this case on a matter material to

#### III.

Is the statement by witness Dog Soldier that he believed defendant was present on the night in question because of information he received from Granger admissible hearsay? We hold it is inadmissible hearsay.

#### IV.

Are the prior inconsistent statements made by witnesses Dog Soldier, Granger, and Morehead to Officer Reinesch admissible as substantive evidence in the O'Brien trial, or are they limited to impeachment of their sworn testimony? We hold that the statements are admissible for impeachment purposes only.

#### V.

Is the pattern jury instruction relating to prior inconsistent statements required in this case? We hold that that pattern jury instruction is required.

### DECISION

#### I.

■ The initial issue before this court is whether the State presented sufficient evidence upon which the jury could base a verdict of guilty. In determining the sufficiency of the evidence, the only question for this court is whether or not there is evidence in the record which, if believed by the jury, is sufficient to sustain a verdict of guilty beyond a reasonable doubt. *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975). To establish sufficient evidence of perjury, the State must have either two witnesses testifying to the falsity of the accused's statement, or one witness with a strong corroborating circumstance of such character as clearly to turn the scale and overcome the oath of the accused in the legal

the issues. Evidence of this kind may be considered by you in connection with all the other facts and circumstances in evidence in deciding the weight to be given to the testimony of that witness, but you must not consider any such prior statement as establishing the truth of any fact contained in that statement.

presumption of his innocence. *State v. Pratt,* 21 S.D. 305, 112 N.W. 152 (1907). The State asks that we reassess the evidentiary requirements necessary to establish perjury. We decline to do this and adhere to the requirement set forth in *State v. Pratt,* supra. The question, therefore, is whether the State presented sufficient evidence to establish one witness, plus strong corroborating evidence to overcome the legal presumption of defendant's innocence and his statement under oath. In order to determine whether there is a sufficiency of evidence, it is necessary to review that evidence as it relates to the other issues raised on appeal.

## II.

The State offered into evidence defendant's testimony during the Granger trial and his statement made to Officer Reinesch on October 10, 1979. The State contends that these statements were properly admissible against defendant as substantive evidence corroborating Dog Soldier's testimony. We agree. Such evidence has sound corroborative value in determining the guilt of a party. *United States v. Davis,* 548 F.2d 840 (9th Cir. 1977). Had the State been able to produce one competent witness under the *Pratt* test, these statements could have served to establish the necessary corroborative evidence upon which a jury could reach a verdict of guilty beyond a reasonable doubt.

## III.

The State attempted to establish the one necessary witness required by *Pratt* through the testimony of Dog Soldier. Dog Soldier's sole basis for placing defendant with the others on the night in question rested on information he had received from Granger. Over defendant's objection, the trial court permitted Dog Soldier to testify concerning this matter.

Q: You don't remember what day it was, though?

A: No.

Q: And, you don't remember if O'Brien was with you or not.

A: I don't remember.

Q: It's possible he was with you.

A: I can't say.

Q: Have you been told he was with you?

A: I'm—usually, I—

MR. COGLEY: I object to that, Your Honor. What he is told is totally incompetent. It would be hearsay.

THE COURT: Overruled.

Q: (BY MR. SAUKERSON). Did you talk to other people to refresh your recollection, Gene, as to what happened that night?

A: No. I didn't talk to nobody.

Q: Did you talk to Granger about it?

A: No.

Q: Didn't you make the statement that Granger had told you that O'Brien was with you?

A: Yeah.

Q: All right. So you talked to him about it, didn't you?

A: No, I didn't talk to him about it.

Q: When did he tell you that?

A: The next day. He told me that O'Brien was with us that night. But, usually, I never believe everything I hear, though.

Q: But he told you that.

A: He told me, but I didn't believe it.

Q: You don't remember?

A: I don't remember whether I don't remember. I just go by my own judgment.

Q: But, you didn't have any judgment that night, did you?

A: No, I can't say I did.

Q: Why didn't you have any judgment that night?

A: I was drunk.

Defendant argues that Dog Soldier's testimony contained inadmissible hearsay testimony. The State argues that the trial court properly admitted this testimony under the exception set forth in SDCL 19–16–

28.[2]  The exception set forth in SDCL 19–16–28 embodies Federal Rule of Evidence 803(24). The purpose of SDCL 19–16–28 is to provide a mechanism for new exceptions to the hearsay rule that do not otherwise fit in the particular class exceptions embodied in SDCL 19–16–5 to 19–16–27. 4 Weinstein's Evidence, ¶ 803(24)[01] at 295 (1979). When asked to admit evidence under this exception, the trial court must insure that all the specific requirements set forth in the rule have been met prior to permitting such evidence to be presented at trial.

■   Initially, the trial court must determine that the statement has the circumstantial guarantees of trustworthiness "equivalent" to those in Rules 803(1) to (23). 4 Weinstein's Evidence, ¶ 803(24)[01], supra, at 290. Granger was a State's witness. While it is true that SDCL 19–16–28 does not exclude a statement merely because of the availability of the witness, it necessarily requires that a higher level of reliability be established where the declarant is available than were he unavailable. In order to determine the reliability or trustworthiness of a statement:

"[A] trier must be able to determine the credibility of the extra-judicial declarant when he made the statement attributed to him, and to do this the statement must be viewed as part of the other evidence in the case." Such factors as the nature— written or oral—and character of the statement, the relationship of the parties, the probable motivation of the declarant in making the statement, and the circumstances under which it was made must be assessed. Also significant are the knowledge and qualifications of the declarant (footnotes omitted).

4 Weinstein's Evidence, ¶ 803(24)[01], supra, at 292. In the present case, Granger's declaration was made to an acquaintance almost one year after the alleged incident. It was made concurrent to a time when he and others were being investigated about the shooting. In light of the factors enumerated above, we find no high degree of trustworthiness that would have permitted the trial court to admit this statement for other than the purpose of impeaching Granger's own testimony. As such, the evidence would not serve as substantive evidence to establish defendant's guilt.

■   Finally, even if the evidence had been admissible under the specific requirements of SDCL 19–16–28, the State admitted that no notice had been given to defendant that this particular hearsay statement would be used in his trial. The State argues that the statement was admissible in that defendant was aware that the statement existed. Mere awareness of the evidence is not sufficient to satisfy the notice requirement enumerated in SDCL 19–16–28. The State was required to at least make defendant aware that the statement was to be used.

Dog Soldier's testimony, absent this statement concerning what Granger had told him, does not provide any evidence that conflicts with defendant's testimony given in the Granger trial. As such, Dog Soldier fails to qualify as a competent witness under *Pratt.*

## IV.

Dog Soldier, Granger, and Morehead were each called as witnesses for the State.

---

**2.**  SDCL 19–16–28 states:  ·

A statement not specifically covered by any of §§ 19–16–5 to 19–16–27, inclusive, but having equivalent circumstantial guarantees of trustworthiness, is not excluded by § 19–16–4, even though the declarant is available as a witness, if the court determines that

(1) the statement is offered as evidence of a material fact;

(2) the statement is more probative on the point for which it is offered than any other evidence which the proponent can procure through reasonable efforts; and

(3) the general purposes of chapters 19–9 to 19–18, inclusive, and the interests of justice will best be served by admission of the statement into evidence.

However, a statement may not be admitted under this section unless the proponent of it makes known to the adverse party sufficiently in advance of the trial or hearing to provide the adverse party with a fair opportunity to prepare to meet it, his intention to offer the statement and the particulars of it, including the name and address of the declarant.

Each of these individuals gave testimony indicating that he was not at the site in question on December 10, 1978. To refute these statements, the State introduced the prior inconsistent statement of each of these witnesses. Under SDCL 19–14–8, a party may impeach its own witness.[3]

■ Dog Soldier's testimony indicated that sometime in December 1978 he had shot at the NWPS transformer, but he specifically denied shooting at the transformer on December 10, 1978. His testimony as to that date was that he and Kelly Straw had been out driving cab. The State called Officer Reinesch, who testified that on October 3, 1979, Dog Soldier admitted to the shooting and ultimately to defendant's involvement. The State argues that the introduction of this statement was proper as a prior consistent statement. SDCL 19–16–2(2).[4] A reading of the transcript reveals that Dog Soldier never admitted to being near the Hormel plant and the transformer on December 10, 1978. Therefore, the statement to Officer Reinesch constituted a prior inconsistent statement and was admissible only as impeachment evidence. It did not provide substantive evidence supporting the State's case against defendant.

Morehead's testimony at Granger's preliminary hearing was properly admissible under SDCL 19–16–2(1).[5] However, Morehead was not a party defendant in the present case; therefore, his prior statements could be used only for the limited purpose of impeaching his credibility. Having been so used, that evidence could not also suffice as substantive evidence against defendant.

■ During his testimony Granger denied that he had been at the scene where the shooting allegedly took place and also denied that he had been with defendant on December 10, 1978. The State introduced Granger's October 3, 1979, statement made to Officer Reinesch wherein he admitted that both he and defendant were at the scene on the evening in question. The State argues that this statement was admissible under SDCL 19–16–3(5).[6] The State argues that these individuals each made statements in October 1979 wherein they implicated themselves and each other in the December 1978 shooting. The State alleges that they subsequently entered into a conspiracy to obstruct justice by denying or renouncing their earlier statements. In *United States v. Nixon*, 418 U.S. 683, 701, 94 S.Ct. 3090, 3104, 41 L.Ed.2d 1039, 1060 (1974), the United States Supreme Court stated:

> The hearsay rule does not automatically bar all out-of-court statements by a defendant in a criminal case. Declarations by one defendant may also be admissible against other defendants upon a sufficient showing, by independent evidence, of a conspiracy among one or more other defendants and the declarant and if the declarations at issue were in furtherance of that conspiracy. The same is true of declarations of coconspirators who are not defendants in the case on trial (footnotes omitted).

No actual charge of conspiracy need be made in order to use the statement, but

---

**3.** SDCL 19–14–8 states:

The credibility of a witness may be attacked by any party, including the party calling him.

**4.** SDCL 19–16–2 states, in pertinent part:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

. . . .

(2) consistent with his testimony and is offered to rebut an express or implied charge against him of recent fabrication or improper influence or motive[.]

**5.** SDCL 19–16–2(1) states:

A statement is not hearsay if the declarant testifies at the trial or hearing and is subject to cross-examination concerning the statement, and the statement is

(1) inconsistent with his testimony and was given under oath and subject to the penalty of perjury at a trial, hearing or other proceeding, or in a deposition . . . .

**6.** SDCL 19–16–3 states, in pertinent part:

A statement is not hearsay if it is offered against a party and is

. . . .

(5) a statement by a co-conspirator of a party during the course and in furtherance of the conspiracy.

there must be shown some evidence independent of the statement that establishes the conspiracy itself. *State v. Guiliano*, 270 N.W.2d 33 (S.D.1978). The State established no independent evidence of a conspiracy beyond alleging that Granger, Morehead, Dog Soldier, and defendant uniformly denied their involvement in the shooting. Likewise, the State has not shown that the statement in question was made in furtherance of such conspiracy. Because no independent evidence was established and because the statement was not made in furtherance of the conspiracy, the trial court should not have permitted the statement to be introduced as substantive evidence against defendant.[7] The statement was proper as a prior inconsistent statement for the purpose of impeaching the witness.

▄ When a prior inconsistent statement has been used to impeach the present testimony of a witness, that evidence vanishes for all other uses. It cannot suffice as substantive evidence. Its sole purpose is to attack the credibility of a witness at the time of trial. It does not and may not be used to prove the truth or falsity of any fact or issue in the case. The prior statements of Dog Soldier, Morehead, and Granger, being admissible for the sole purpose of impeaching the credibility of these witnesses, could not then be used as evidence upon which a jury could determine the guilt of defendant beyond a reasonable doubt. The State could not use these statements to establish its needed one witness under the *Pratt* test.

## V.

▄ The testimony of the various State witnesses consisted of substantial amounts of evidence which should have been considered by the jury only for the purposes of impeaching those witnesses. Failure to inform the jury as to a limited use to be made of those statements permitted the jury to consider such statements as substantive evidence against defendant. Without an in-

struction, the jury could not properly sort out which statements it could consider for substantive evidence and which it could consider for impeachment only. Indeed, this was the State's very objection to the use of jury instruction 1–17–8. The State's objection to that instruction was valid insofar as the instruction failed to delineate between defendant's own prior inconsistent statement and those of other witnesses. It was incumbent upon the trial judge to instruct the jury as to each witness and the use that could be made of such statement.

## CONCLUSION

▄ Having reviewed the evidence under the issues raised by defendant, we turn again to the initial question of whether or not the State established sufficient evidence upon which to base a verdict of guilty beyond a reasonable doubt. We find that the State failed to present evidence sufficient to sustain a verdict of guilty. The testimony of Dog Soldier relied upon hearsay. The prior statements of Dog Soldier, Morehead, and Granger could be used only to impeach these witnesses. The State did not produce one witness who could competently testify to the falsity of defendant's own testimony under oath.

The judgment of conviction is reversed.

WOLLMAN, C. J., and DUNN and FOSHEIM, JJ., concur.

HENDERSON, J., concurs in part and dissents in part.

YOUNG, Circuit Judge, sitting for MORGAN, J., disqualified.

HENDERSON, Justice (concurring in part, dissenting in part).

This case focuses on the night the lights went out in Mitchell, South Dakota, namely December 10, 1978. A radiator at the Northwestern Public Service substation, located near the Hormel plant, was shot thus rendering a transformer inoperable and re-

7. This same argument was advanced by the State in regard to the statement made by Granger to Dog Soldier. Based on the same reason-

ing, that statement would also be inadmissible under SDCL 19–16–3(5).

sulting in a power outage. Four young men, including defendant, were involved in the shooting incident. Through a conspiracy of silence and lies, both in and out of the courtroom, the participants have all sought to avoid prosecution, to include perjury charges. They have been quite successful.

There is sufficient evidence, under the traditional sufficiency of the evidence standard, to support the jury's guilty verdict. This standard is set forth in *State v. Shank*, 88 S.D. 645, 226 N.W.2d 384 (1975), and basically confronts the reviewing authority with this question: Is there sufficient evidence, if believed by the jury, to sustain a finding of guilt beyond a reasonable doubt? *State v. Dietz*, 264 N.W.2d 509 (S.D.1978); *State v. Wilson*, 297 N.W.2d 477 (S.D.1980). There was conflicting evidence in this trial; it is, however, within the province of the jury to weigh conflicting evidence. The credibility of witnesses became an issue in this trial; again, this was a question of fact for the jury and not one for this reviewing body. *See State v. Masteller*, 272 N.W.2d 833 (S.D.1978).

Defendant was charged with committing the crime of perjury as follows:

That on or about the 30th day of June, 1980, in the County of Davison, State of South Dakota, [defendant], did commit the public offense of perjury (SDCL 22–29–1) in that he did willfully, wrongfully and feloniously, after taking an oath that he would testify truthfully before a jury impaneled to try the case of *State of South Dakota v. Robert Lee Granger* in which the defendant, Robert Lee Granger was charged with intentional Property Damage (felony) (SDCL 22–34–1) and intentional interruption of Utility Service (felony) (SDCL 22–34–28), intentionally and contrary to such oath, state a material matter, to-wit: that he was not present with Robert Lee Granger in the vicinity of the Northwestern Public Service transformer on December 10, 1978, and that at the time he was at his home, contrary to statute in such case made and provided against the peace and dignity of the State of South Dakota.

The crime of perjury is defined in SDCL 22–29–1, which states:

Any person who, having taken an oath that he will testify ... truly before any competent tribunal ... in any of the cases in which such an oath may by law be administered, intentionally and contrary to such oath, states any material matter which he knows to be false, is guilty of perjury.

Fourth Judicial Circuit Court Reporter Gary Lutgen testified in the case before us that defendant took an oath in his companion's case (*State v. Granger*) and that defendant testified he was not at the shooting scene, but, rather, was home asleep in bed. This testimony is at absolute variance with a previous written statement signed by defendant and given to the investigating officer, Detective Reinesch of the Mitchell Police Department. In this statement defendant admitted that he, Gene Morehead, Bob Granger, and Gene Dog Soldier were in Morehead's car, *a late model Ford*, and Dog Soldier and Granger *fired three shots.* State rebuttal witness Gerald Ruden testified that he observed *a late model Ford* leaving the vicinity of the Hormel plant shortly after *three shots had been fired* on the night of December 10, 1978. Ruden's testimony was corroborative of the facts as related by defendant in his written statement to Detective Reinesch. Defendant's written statement was introduced and received into evidence without objection from the defense. Under the evidence, the jury could have reasonably concluded that defendant told the truth when the entire episode was initially under investigation and then perjured himself at the Granger trial; hence, the jury entered a verdict of guilty. The majority opinion concedes that defendant's written statement to Officer Reinesch and defendant's testimony at the Granger trial were substantive evidence for the jury's consideration. Ruden's testimony is independent corroboration of the crime and it is likewise substantive evidence.

Viewing the evidence as a whole, and not with a preoccupation of a technical disserta-

tion on the niceties of the rules of evidence, the record reasonably bears out that defendant, Dog Soldier, Morehead, and Granger were all present at the shooting scene and that the initial statements given by them to the Mitchell Police Department were consistent.

Defendant testified at his own trial; his testimony that his earlier written statement to Detective Reinesch came from (a) information supplied through his sister or (b) fabricated from his own imagination is incredible for, under the cold, cutting knife of cross-examination, his answers to questions by the prosecution reflected that he had personal knowledge of the shooting incident and implicitly placed himself at the scene.* Hence, defendant had to have been present at the shooting scene the night in question and the jury had the right to believe that he deliberately perjured himself by saying in an earlier trial that he was home, fast asleep. This incriminating testimony was likewise substantive and this Court may indulge in a consideration of this evidence which, if believed by the jury, was sufficient to sustain a finding of guilt beyond a reasonable doubt.

Our Court has adopted the "two-witness rule." *State v. Reidt*, 56 S.D. 539, 229 N.W. 398 (1930); *State v. Pratt*, 21 S.D. 305, 112 N.W. 152 (1907). This rule has neither a statutory nor constitutional mandate. It evolved from eighteenth century English cases which essentially held that a perjury conviction should not be based upon oath against oath. This rule, however, is not without exception due to the courts' discovery that a strict adherence thereto would often result in unconscionable results. *See* Wigmore on Evidence, vol. VII, § 2040, Chadbourne Revision (1978).

A notable exception to the two-witness rule is discussed in 88 A.L.R.2d 852 (1963) and is referred to as the "documentary evidence exception"; basically, it expresses that if direct documentary evidence emanates from the accused, then such evidence

may act as a substitute for the testimony of a witness. It reasons, under such circumstance, that there need not be any witness testifying directly to the falsity. Obviously, if the two-witness rule is founded upon the necessity of corroborating the oath of one witness regarding false testimony by the accused, then corroboration may be in a form other than a witness on the witness stand. *See Hammer v. United States*, 271 U.S. 620, 46 S.Ct. 603, 70 L.Ed. 1118 (1926).

Wharton's Criminal Evidence, vol. 2, (13th ed. 1972 and 1981 Supp.) indicates that a conviction of perjury can be sustained on the testimony of one witness which is corroborated by other circumstances. To me, this makes sense; evidence does not always come into the record by oral testimony of a witness. There is no magic in proving up perjury by two warm bodies in the courtroom. The corroborating evidence may be direct or circumstantial, testimonial or documentary and may consist of a prior inconsistent statement by the defendant, whether oral or written, and whether under oath or not. This includes "matters constituting a part of the res gestae of the fact or issue in respect of which accused testified falsely." 70 C.J.S. *Perjury*, § 59, § 67 (1951). There is sufficient and respectable authority in the United States to justify a modification of our decisions of 1907 (*State v. Pratt*, supra) and 1930 (*State v. Reidt*, supra) which established the two-witness rule. Accordingly, I would modify the decisional law of this state.

I do not read *United States v. Davis*, 548 F.2d 840 (9th Cir. 1977), as absolute authority for reversing this particular conviction of perjury. Rather, that decision may be interpreted to sustain the conviction herein. In *Davis*, as in this case, a law enforcement officer (FBI agent) took a signed, unsworn statement from the accused. This statement contradicted the testimony given by the accused at trial. The FBI agent testified as to these inconsistencies; the government used the FBI agent's testimony as

---

* To paraphrase Shakespeare: "Methinks he doth protest too much." Defendant bespeaks

his innocence, yet his lips indict him.

corroboration of the accused's signed statement. In upholding the accused's statement to satisfy the two-witness rule and in discounting the accused's argument that this was "bootstrapping," the court in *Davis* said at 843:

[The defendant's] statement amounted to a written admission by [him] and was entirely consistent with the testimony given by [the FBI agent]. In *Vetterli v. United States*, 198 F.2d 291, 293 (9th Cir.), *vacated on other grounds*, 344 U.S. 872, 73 S.Ct. 175, 97 L.Ed. 675 (1952), we emphasized:

"Admissions of a party charged with perjury, if made under such circumstances as render them clearly admissible, seem to us to have a sound corroborative value."

The defendant contends that the use of this signed statement to satisfy the corroborative evidence requirement of the two-witness rule amounts to bootstrapping in that the statement was written and composed by [the FBI agent]. We disagree. Where one witness testifies to the fact of perjury, independent corroborative evidence suffices under the two-witness rule if it tends to confirm the truth of the witness's testimony in material respects and thereby induces belief in his testimony. Since the corroborative evidence need not be strong nor even independently sufficient in itself, it may be supplied by the defendant's own conduct.

Assuming arguendo that the two-witness rule should be adhered to in this case, I would hold that the trial court properly denied the motion for judgment of acquittal. The testimony of Detective Reinesch, the unsworn statement of defendant, the testimony of the court reporter, the independent corroborative testimony of Ruden, and defendant's own statements under cross-examination at trial all provided sufficient evidence—as a matter of law—to establish a factual question for the jury to render a verdict of guilty or not guilty on the perjury charge. Collectively, there were three statements made by defendant which incriminated him: (1) his unsworn

statement, (2) his testimony at the Granger trial, and (3) his testimony at his own trial. Each was substantive evidence.

Thus, I would not reverse defendant's conviction on grounds of insufficient evidence and therefore I dissent on this aspect of the majority opinion.

I concur, however, with that aspect of the majority opinion which would reverse the conviction due to jury instructions. Defendant proposed an instruction identical to South Dakota Pattern Jury Instruction, vol. II, § 1–17–8, and the trial court refused to give the instruction. In *State v. Gage,* 302 N.W.2d 793 (S.D.1981), this Court set out four requirements for the use of a prior inconsistent statement for the limited purpose of impeachment. The final requirement is that the trial court "adequately instruct the jury about the limited purpose for which the prior inconsistent statement is admitted." *Id.* at 798.

There were prior inconsistent statements introduced during the course of this trial and some of them were for purposes of impeachment. These consisted of inconsistent versions of the same shooting incident. The trial court was fearful of using the stock instruction due to the probability of confusing the jury as to whether the inconsistent statements were substantive or impeachment evidence. The trial court not only refused the proposed stock instruction but gave no other type of cautionary or limiting instruction with the result being that the jury was free to consider the prior inconsistent statements as substantive proof of defendant's guilt. The sorting out of these statements, and to instruct on each under the repeated lies brought before this jury, constituted an instruction nightmare for the trial judge. As difficult as it would have been, though, the trial judge should have given a limiting or cautionary instruction on the limited purpose for which the prior inconsistent statements were admitted. Although the state advocates that this was harmless error at best, I believe that the failure to give any distinguishing instruction on inconsistent statements consti-

tuted prejudicial error. Having been on the trial bench for four years, I can understand the dilemma the trial judge was in. Our 20–20 hindsight now impales his on-the-spot decision. In fairness to the trial court, it should be said that the ruling on instructions was made prior to this Court's decision in *State v. Gage*, supra.

Men who paralyze a city's sight and life-blood, having fulfilled their devilment, and then conspire to tell false stories to escape punishment should be brought to the bar of justice for trial. The thrust of this writing is that defendant would be retried for perjury and thus the reason I have again toiled so long in this valley of endless legal brush.