**STATE of Missouri, Respondent,**

v.

**Donna S. CHAVEZ, Appellant.**

**No. WD 38393.**

Missouri Court of Appeals,
Western District.

June 30, 1987.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Aug. 4, 1987.

Application to Transfer Denied
Sept. 15, 1987.

Kathleen Murphy Markie, Columbia, for appellant.

William L. Webster, Atty. Gen., Timothy W. Anderson, Asst. Atty. Gen., Jefferson City, for respondent.

Before KENNEDY, P.J., and LOWENSTEIN and GAITAN, JJ.

LOWENSTEIN, Judge.

Defendant Chavez appeals her jury trial conviction of perjury, § 575.040 RSMo 1978, and sentence by the court as a prior offender to an eight-year term of imprisonment. The issue on appeal is the sufficiency of the evidence to support the conviction.

Chavez was charged by indictment with committing perjury by testifying falsely, while a witness under oath in the criminal trial styled *State v. Roxanna Kress*, that she did not see Roxanna Kress assault Joanna Shaddox. The evidence adduced at the perjury trial, viewed in the light most favorable to the verdict, was as follows: during the early morning hours of March 24, 1984, Chavez learned that her husband was at Shaddox's residence. She suspected that Shaddox was having an extramarital affair with her husband. Chavez and her sisters, Roxanna Kress and Zana (also called Karen), obtained directions to Shaddox's residence and decided to try to find Chavez's husband. They stopped on the way to Shaddox's house and bought a bottle of liquid Drano, a highly caustic substance. When they arrived at Shaddox's residence, they found Chavez's husband in bed with Joanna Shaddox. An altercation broke out in which the Drano was thrown

at Shaddox. Shaddox was seriously injured and was blinded in one eye by the Drano.

Chavez's deposition, as a witness, was taken in connection with the assault case against Roxanna Kress arising out of the Drano incident. While under oath and with her attorney present, Chavez testified as follows:

Q. (Larry Harman, prosecuting attorney): Someone had the Drano at that time in the bedroom of Joanna's house, is that correct?

A. Yes.

Q. *Who had the Drano?*

A. *Roxanna.*

Q. What did she do with it?

A. *She threw it toward the bed.*

Q. Did it splash on Joanna?

A. On Joanna, the bed, Brian, and myself.

Q. Okay. Was anybody else injured to your knowledge by the Drano?

A. No.

Q. Except for Joanna?

A. Right.

Q. *And Roxanna threw the Drano?*

A. *Yes.*

Q. In the direction of the bed?

A. Right.

(Emphasis added.)

Chavez was also charged with the assault on Shaddox. At her assault plea hearing, in May, 1985, Chavez told the court that she thought Roxanna threw the Drano, but her memory was faulty, because she was drunk during the incident. The court asked the following: "Roxanna? You saw her do that; and you didn't do it,?" to which Chavez responded, "No, sir; I didn't." The court sentenced Chavez to eight years for her part in the assault and granted her probation.

The assault trial of Roxanna Kress took place in October, 1985. Chavez was called as a witness by the defense. Chavez testified that when she and her sisters went upstairs at the Shaddox residence, she saw two people in a bed in a darkened room. The three sisters went in and turned on the light. Someone pulled the covers off the couple in bed, revealing Shaddox and Chavez's husband. Chavez testified that at that time she didn't know who had the Drano.

When the prosecutor asked defendant who threw the Drano on Shaddox, the following colloquy took place:

A. Okay, I was sitting behind Brian on the bed. Right, okay, so, therefore, as far as my correct vision would be to see who actually threw it, I could not properly say that I actually saw Karen throw it or Roxanna throw it.

All I know definitely is that I did not throw it.

Q. Okay, you don't recall telling Detective McInerney also in the same statement that "My sister, Karen, pulled the covers back on the bed. And I knew that they were naked. I think it was Karen that did this but it might've been Roxanna.

When I saw this I leaned past Brian and scratched Joanna on her chest. Sometime after this I broke the beer bottle that I had in my hand and I cut Joanna on her arm.

Just after this Roxanna took the liquid Drano and threw it at the bed where it ended up in Joanna's face."

You don't remember making that statement?

A. Yeah, I remember making that statement, but at the time I was thinking of where their standing positions were and where they were positioned. And by the position who could've been there.

Q. Well, is that true or not, ma'am?

A. That I made the statement?

Q. Yes.

A. It's true, yes, I made the statement.

Q. Well, then it's true that Roxanna threw the liquid Drano?

A. I, like I said before, I cannot properly say that I saw her throw it. And I'm being totally honest.

The jury acquitted Roxanna Kress on the assault charge. Chavez was then charged and convicted of perjury, and this appeal followed.

On appeal, the defendant's sole point is the evidence was insufficient to support the verdict. The defendant asked for and the court reviews under plain error. Rule 30.-20. *See State v. Neal*, 610 S.W.2d 358, 359 (Mo.App.1980). To review the sufficiency of the evidence to support the conviction, the facts in evidence and all inferences that can reasonably be drawn from the evidence are viewed in the light most favorable to the verdict disregarding all contrary evidence and inferences. *State v. Brown*, 660 S.W.2d 694, 698–99 (Mo. banc 1983); *State v. Hardin*, 627 S.W.2d 908, 909 (Mo.App. 1982). After review under this standard, the court concludes the state's evidence was sufficient to support a conviction of perjury.

A summary of the events is as follows: 1) In Roxanna's assault case Chavez gave deposition testimony that Roxanna threw the Drano; 2) At her own plea hearing for assault Chavez said she was not sure Roxanna threw the Drano; 3) at Roxanna's trial, Chavez as a defense witness for her sister, admitted she had in the deposition said Roxanna threw the Drano, but her in-court testimony was she didn't see Roxanna do it.

Chavez was charged by indictment with committing perjury in that, while a witness under oath in Roxanna's criminal trial, and "with the purpose to deceive, she knowingly testified falsely to a material fact . . . by testifying . . . that she did not see Roxanna Kress do anything to Jo Ann Shaddox, when she had previously stated she had seen Roxanna hold a bottle of Draino [sic] in her hand and throw it at Jo Ann Shaddox." To secure a perjury conviction, the state must prove beyond a reasonable doubt that the defendant knowingly and with a purpose to deceive testified falsely "to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public, or other officer authorized to administer oaths." Section 575.040.1 RSMo 1978.

For many years, the courts of this state required the prosecution in a perjury trial to establish the falsity of the sworn state-ment either by the direct evidence of two witnesses or by the testimony of one witness, "corroborated by other independent circumstances or evidence." *State v. Burgess*, 457 S.W.2d 680, 681 (Mo. banc 1970). The foregoing was referred to as the "quantitative evidence rule" in perjury cases. *Id.* Mere evidence the defendant had made prior declarations that contradicted the later sworn testimony was not sufficient to support a conviction for perjury. *State v. Byrd*, 676 S.W.2d 494, 504 (Mo. banc 1984). The state was required to offer strong corroborative evidence to show that the sworn testimony was actually false. *State v. Carter*, 315 Mo. 215, 285 S.W. 971 (Mo.1926)

In 1979, the legislature modified the "quantitative evidence" rule by enacting § 575.070, RSMo Supp.1985. *Comment to the 1973 Proposed Code*, V.A.M.S. § 575.-070 (1979). The statute provides that no person shall be convicted of perjury "except upon the proof of the falsity of the statement by (4) A directly contradictory statement by the defendant under oath together with (a) The direct evidence of one witness; or (b) Strongly corroborating circumstances." Section 575.070(4). In enacting the statute, the legislature expressly rejected the Model Penal Code approach, which would permit the state to sustain a conviction of perjury by showing a direct contradiction under oath, "without the necessity of having to prove which statement was false." The present Missouri statute strikes a compromise between the older rule in Missouri and the Model Penal Code approach which requires only that the prosecution show contradictory statements by the defendant.

At the perjury trial, the state offered the testimony of an investigating police officer and Chavez's parole officer to the effect that Chavez had said Roxanna threw the Drano. The state introduced a sworn statement that Chavez gave the officer in which Chavez stated unequivocally that Roxanna had been the one who threw the Drano. When asked during perjury trial why her memory of the assault were vague, Chavez explained that she was un-

der the influence of alcohol and narcotics on the evening of the assault and that most of her knowledge of the details about what occurred had been supplied by her husband and her sisters.

The state's evidence at the perjury trial consisted only of proof of the sworn statement given at Roxanna's trial, which was alleged to be false, and the testimony of several witnesses concerning contradictory statements that defendant had made before the trial. But proof of numerous conflicting statements by a defendant, even though the statements were made under oath, is not sufficient corroborating evidence of the falsity of the sworn testimony to convict under the present § 575.040. The state, under the statute, must demonstrate either by direct evidence of a witness other than defendant, or by "[s]trongly corroborating circumstances ... ," the falsity of the alleged false statement.

■ In this case, the corroboration comes from Chavez's own testimony, and from the circumstances of the case. The state sought to prove that Chavez's testimony at her sister's trial, that she did not know who threw the Drano, was false. The investigating officer testified that Chavez immediately after the assault stated with certainty who threw it. His testimony was corroborated by the introduction of Chavez's signed written statement. A signed statement by the defendant that contradicts the in-court testimony, if made under circumstances that would render it admissable, has strong corroborative value in a perjury trial. *State v. Davis,* 548 F.2d 840, 843 (9th Cir.1977).

Further, Chavez and Roxanna Kress are sisters. Their relationship provided corroboration for the state's position that defendant perjured herself at Roxanna's trial by refusing to incriminate Roxanna. The jury was permitted to find that the familiar relationship added to the likelihood that defendant's trial testimony was false. *United States v. Scott,* 682 F.2d 695, 697 (8th Cir.1982).

■ Finally, strong corroborative evidence was provided by Chavez's own testimony at the perjury trial. *See, e.g., United*

*States v. Davis, supra,* 548 F.2d at 844. On cross-examination, Chavez admitted that the written statement she gave to the police was true. When reminded of her statements in the deposition, she admitted they were true. She acknowledged that everything in the deposition was true and correct and said she had read the deposition and signed it. The jury would have been justified in finding that Chavez admitted that her testimony in Roxanna's trial was perjured and that she herself had supplied the necessary corroboration. A defendant who testifies in defense of a perjury charge may by his own testimony supply the required corroboration of the truth of the prior contradictory statements or the falsity of the alleged perjured testimony. *Id.*

■ The jury could reasonably have found from the evidence that defendant committed perjury at Roxanna's trial, and the evidence was sufficient to support the conviction.

One highly disturbing factor, totally unpreserved and unmentioned in the briefs, remains. Chavez was charged by information with the Class B felony of perjury under § 575.040 RSMo. The court entered a judgment of conviction of the Class B felony and sentenced Chavez, as a prior offender, to an eight-year term of imprisonment.

The perjury statute, in pertinent part, provides:

1. A person commits the crime of perjury if, with the purpose to deceive, he knowingly testifies falsely to any material fact upon oath or affirmation legally administered, in any official proceeding before any court, public body, notary public or other officer authorized to administer oaths.

* * * * * *

7. Perjury committed in any proceeding involving a felony charge is a class C felony unless:

(1) It is committed during a criminal trial for the purpose of securing the conviction of an accused for murder, in which case it is a class A felony; or

(2) It is committed during a criminal trial for the purpose of securing the conviction of an accused for any felony except murder, in which case it is a class B felony.

The offense, when committed during any proceeding involving a felony charge but not committed for the purpose of securing a conviction, is a class C felony. MAI–CR2d 29.10 Notes on Use 4. The perjured testimony here was not to convict but to acquit.

Although charged with class B perjury, the state's verdict director made no mention of the element of the perjury occurring for the purpose of securing a conviction. The verdict director tracked the language of perjury amounting to a class C felony. Section 575.040 *supra.* To further complicate matters, Chavez, as a prior offender was sentenced by the court to eight years.

 The legislature in § 558.016.2, RSMo 1986 defines a prior offender as one who has pleaded to or found guilty of one felony. Section 558.016 provides for an extended term only for persistent and dangerous offenders, not prior offffenders. Under 558.016.1 a court may sentence a prior offender now found guilty of a class B, C, or D felony under the terms of § 558.011. Section 558.011.1(2) sets a sentence of five to fifteen years for a class B felony, while (3) sets a limit of seven years for a class C felony. Chavez would suffer a manifest injustice in being sentenced to eight years when guilty only of what amounts to class C violation of perjury. Rule 30.20. This court is left with the dilemma as how to dispose of the case. The defendant was improperly charged, but the corrent instructions were given, and on those instructions the jury found her guilty, but her sentence was incorrect. One approach would be to find the defendant improperly charged and the evidence insufficient—resulting in a discharge. Another approach would be to determine no double jeopardy problem and reverse and remand for a proper charge and trial under class B perjury. The court adopts the third alternative, that with the correct instructions the defendant was found guilty of

class C perjury—her only prejudice resulting from being improperly sentenced, an error correctable on remand. Under the circumstances here, and because of the unpreserved error, the court deems the class C perjury instruction as submitted to the jury to be a lesser included offense of the crime charged. Section 556.046.1(1) defines a lesser included offense as being one "established by proof of the same or less than all the facts required to establish the commission of the offense charged." The evidence supported the given instruction, and on which the jury found guilt, the error here was in sentencing Chavez, as a prior offender, to a term greater than authorized by statute. The sufficiency of the sentence may be reviewed on appeal. *State v. Garrett,* 642 S.W.2d 378 (Mo.App.1982). The trial court on remand should be limited to sentencing Chavez under § 558.011.1(3), the provision for a class C felony.

The judgment of conviction is affirmed, but the cause is remanded for the sole purpose of resentencing Chavez consistent with this opinion. *State v. Moore,* 633 S.W.2d 140, 148 (Mo.App.1982).

KENNEDY, Judge, dissenting.

I would discharge this defendant. I think the State failed to establish a perjury case against her.

The indictment charged that Donna perjuriously testified that she had not *seen* Roxanna do anything to Joanna, whereas she had earlier said "she had *seen* Roxanna hold a bottle of Draino (sic) in her hand and throw it at Jo Ann Shaddox". (Emphasis mine).

The proof did not show that Donna had ever said that she had seen Roxanna throw the Drano at Joanna. The proof showed that she had on two occasions made the conclusory statement that Roxanna had thrown it, without saying how she had reached that conclusion.

At the trial Donna did not testify that Roxanna had not thrown the Drano. She did not deny Roxanna's presence and her active role in the assault upon Joanna. She said only that she had not seen her throw the Drano. This contradicted nothing she

had said before. The earlier statement and the later were not "mutually exclusive". *Brown v. State,* 334 So.2d 597, 599 (Fla. 1976). They were not "irreconcilably contradictory", "absolutely incompatible" or "inconsistent to the degree that one of them is necessarily false." *Dunn v. United States,* 442 U.S. 100, 102, 99 S.Ct. 2190, 2192, 60 L.Ed.2d 743, 747 (1979) (quoting 18 U.S.C. § 1623 (Supp. I 1976)); *People v. DiGiacomo,* 193 Cal.App.2d 688, 14 Cal. Rptr. 574, 577 (1961); *Blackburn v. State,* 495 N.E.2d 806, 807 (Ind.Ct.App.1986). The later statement was not "directly contradictory" to the first, as required by § 575.070 RSMo Supp. 1985.

It is common experience to assert a proposition upon the basis of hearsay, or upon circumstantial evidence—but then to say, when pressed for minute accuracy, "I was not looking directly at the action; I did not actually see it." Few witnesses are guiltless of perjury if it is perjury to qualify an earlier positive statement.